STATE OF NORTH CAROLINA v. LEONARD WAYNE SHAW

No. 244A86

(Filed 28 July 1988)

1. **Criminal Law § 67.1— voice identification testimony—no pretrial identification —voir dire hearing unnecessary**

    The trial court did not err in denying defendant's request for a voir dire hearing to determine whether in-court voice identification testimony by a burglary and assault victim was of independent origin and not tainted by an illegal pretrial identification where there was no evidence of any pretrial identification of defendant by the victim. An interview in which the victim answered affirmatively when asked by the investigating officer whether she had recently hired anyone to work in her yard did not constitute a pretrial identification which would require a voir dire hearing.

2. **Criminal Law § 111.1— refusal to instruct on identification—harmless error**

    The trial court in a burglary, larceny and assault case erred in failing to give an instruction on identification as requested by defendant. However, such error was not prejudicial where the trial court instructed the jury for each crime charged that it must find beyond a reasonable doubt that *this defendant* committed the crime in order to return a guilty verdict; the evidence pointing to defendant as the perpetrator of the crimes was strong and essentially uncontradicted; the defense emphasized its challenge of the identification of defendant as the perpetrator of the crimes; and it appears that the same result would have been reached by the jury had the instruction been given. N.C.G.S. § 15A-1443(a) (1983).

3. **Criminal Law § 99.4— court's remarks when ruling on objections—no expression of opinion**

    The trial court's remarks, "Well, as phrased, sustained," and "Well, sustained for the moment," made when sustaining defendant's objections to ques-

tions asked by the prosecutor, did not constitute an improper expression of opinion on the evidence. N.C.G.S. § 15A-1222 (1983).

**4. Criminal Law § 102.6— jury argument—misstatement of evidence by prosecutor—no gross impropriety**

Any misstatement of the evidence by the prosecutor in his jury argument was not so grossly improper as to require the trial court to intervene *ex mero motu.*

**5. Criminal Law § 102.6— jury argument—comparison of jury to computer—no gross impropriety**

Assuming that the prosecutor's jury argument comparing the function of the jury to that of an "MIT computer" and stating that if the information produced by this trial was put into the computer the chances of the computer not finding defendant guilty would be "one in maybe ten million" was improper, the impropriety was not so gross or excessive as to require the trial judge to intervene *ex mero motu.*

**6. Constitutional Law § 48— effective assistance of counsel—jury selection—refusal to permit defendant's brother to sit at counsel's table**

The trial court's refusal to allow defendant's brother to sit at counsel's table during the jury selection process did not deprive defendant of the effective assistance of counsel where defendant's brother was allowed to sit directly behind defense counsel and to communicate with defense counsel during jury selection.

**7. Criminal Law § 50.2— officer qualified as expert—testimony admissible as lay opinion**

Testimony by a law officer who was qualified as an expert in fingerprint identification that tennis shoes found behind the victim's home and those worn by defendant measured eleven inches in length and that each pair of shoes showed signs of wearing on the heel and ball areas constituted proper lay opinion testimony which required no expertise so that the witness was not allowed to express expert opinions on matters outside his area of expertise. N.C.G.S. § 8C-1, Rule 701 (1986).

APPEAL by defendant pursuant to N.C.G.S. § 7A-27(a) from judgments entered by *Brannon, J.,* at the 2 December 1985 Criminal Session of Superior Court, DURHAM County. Heard in the Supreme Court 14 March 1988.

*Lacy H. Thornburg, Attorney General, by Doris J. Holton, Assistant Attorney General, for the State.*

*Laurence D. Colbert for defendant-appellant.*

FRYE, Justice.

Defendant was sentenced to life imprisonment for first degree burglary, ten years imprisonment for felonious larceny, and ten years imprisonment for assault with a deadly weapon inflicting serious injury. The ten year sentences are to run consecutively at the expiration of the sentence of life imprisonment. Defendant appeals his first degree burglary conviction and the resulting life sentence to this Court as a matter of right. His motion to bypass the Court of Appeals on the felonious larceny and assault with a deadly weapon inflicting serious injury convictions was allowed by this Court 26 June 1987.

Defendant contends he is entitled to a new trial on all charges because of alleged errors made by the trial court during his trial. Specifically, he alleges the trial court erred in (1) admitting evidence of voice identification without conducting a *voir dire* hearing; (2) failing to instruct the jury on identification of the defendant; (3) expressing an opinion on the guilt or innocence of the accused; (4) failing to interrupt the prosecutor's comments during closing argument; (5) denying defendant his right to effective assistance of counsel; and (6) allowing an expert to express an opinion on matters outside his area of expertise. Having reviewed the record and the assignments of error brought forward by defendant, we find that defendant received a fair trial, free of prejudicial error.

The evidence produced by the State tended to show that on the evening of 24 July 1985, Marjorie Shepard, age eighty-one, was alone in her home. Shortly past midnight, after retiring upstairs for bed, she was awakened by the creaking of stairs as someone ascended to her bedroom. Ms. Shepard, upon spotting the intruder, asked him what he wanted. He replied that he did not want to hurt her but wanted only a pistol and $20.00. She told the intruder that she had neither. This response apparently angered the intruder as he then began to choke the elderly woman and, on at least one occasion, hit her in the face. Ms. Shepard testified that this assault lasted from ten to fifteen minutes.

The State's evidence further showed that Ms. Shepard later directed the intruder to the location of a pickle jar containing quarters which was located in a dresser drawer in the bedroom.

While the intruder was looking for the quarters, she managed to escape down the stairs. Apparently, neighbors heard her screams and called the police.

Officer C. M. Bullock of the Durham County Police Department arrived at approximately 12:30 a.m. Officer Bullock began looking behind the victim's home and adjacent houses. Upon seeing Ms. Shepard at the front of her home, Officer Bullock approached her to offer his assistance. At that point neighbors called his attention to a person running toward the rear of the house but the officer was unable to apprehend or identify the suspect.

Detective Andrew Harris, also of the Durham County Police Department, was assigned to investigate the case. Not being able to speak with Ms. Shepard until her release from the hospital, Detective Harris began his investigation which included talking to her neighbors. One neighbor informed him that a young man, the defendant, had earlier worked for Ms. Shepard. The evidence revealed that several days prior to 25 July 1985, a young male had worked in Ms. Shepard's yard for several days, and on two occasions during that time had been in her home. Ms. Shepard had contracted to have yard work and painting done and defendant was selected by his employer to do this work.

Defendant's employer, Linwood Howard, testified for the State. He stated that on the morning of 25 July 1985 he arrived at the home of defendant to take him to work. Defendant stated that he could not work because he had left his shoes in his girlfriend's car the previous evening. Defendant then was given money by Howard to buy another pair. Howard testified that upon returning from work that day, he and defendant stopped to purchase soft drinks. Howard had no change, so defendant furnished sufficient change to purchase cigarettes and a soft drink from a vending machine. Howard testified that the change appeared to be all silver and was in a bag or wrapped in something white. Howard further stated at trial that defendant had not been paid yet, and that he thought it strange that defendant had money because he had frequently loaned defendant money.

The investigation of the crime scene conducted by the Durham Police Department revealed that there was a forcible entry through the furnace room door located at the rear of the victim's

home. Pry marks were found on the outside of the door around the lock. The investigation also revealed a break in a pane of glass in the door and a tear was also discovered in the screen of the door near the latch. Behind the residence, Officer Bullock discovered a pair of Nike tennis shoes. The shoes were located beside the steps to the porch and had splotches of off-white paint on them.

The State presented additional evidence which tended to show that the Nike tennis shoes found near the point of entry and a red and black cap found on Ms. Shepard's bed belonged to the defendant. Moreover, a forensic chemist with the SBI testified that the paint on the tennis shoes found near the victim's home was the same with respect to color, texture, solvent characteristics, and inorganic composition as the off-white paint used by defendant in previous painting assignments during his employment with Mr. Howard.

Defendant presented no evidence during the trial.

The jury returned verdicts of guilty of first-degree burglary, felonious larceny, and assault with a deadly weapon inflicting serious injury. The trial court found as an aggravating factor that the defendant had a prior conviction or convictions for criminal offenses punishable by more than sixty days confinement. It found no mitigating factors and imposed sentences as previously indicated.

[1] By his first assignment of error, defendant contends that the trial court erred in overruling his objection to voice identification questions without conducting a *voir dire* hearing. Specifically, defendant argues that when the State offers a witness whose testimony tends to identify the defendant as the person who committed the crime charged, the trial court errs if it fails to make sufficient findings of fact that this in-court identification of the defendant was of independent origin and not tainted by an illegal pre-trial identification. We find this argument specious.

Defendant relies on this Court's decision in *State v. Accor and State v. Moore*, 277 N.C. 65, 175 S.E. 2d 583 (1970). This reliance is misplaced. That case involved a pre-trial identification of the defendant by the victim, thus properly presenting the question of whether the in-court identification was tainted by a pre-

trial identification. Here, there was no evidence of any pre-trial identification of the defendant by the victim. Therefore, the question of pre-trial taint does not arise.

Defendant argues that during the course of the investigation of this case, Detective Harris queried the victim about a particular person who had worked in her yard. Later during direct examination, when asked if she could identify the voice of the perpetrator of the assault and theft, Ms. Shepard stated that "it must have been the same person who came there and painted my bricks at the house because he knew how to come in the door and come upstairs." Defendant apparently characterizes as a "pre-trial identification" the questioning of Ms. Shepard by Detective Harris.

We find this characterization of the interview between the victim and the investigating officer as a pre-trial identification to be fallacious. Detective Harris neither mentioned nor suggested that the voice of the perpetrator of the crimes was similar to defendant's voice. We can find in the record no indication of any discussion regarding the defendant's voice that transpired prior to trial. The investigator merely asked the victim if she recently had hired anyone to work in her yard. To this, she answered in the affirmative. It was not until the trial itself, when asked had she heard the voice before, that she stated for the first time that the voice must have been that of the person who had worked in her yard.

In *State v. Green*, 296 N.C. 183, 250 S.E. 2d 197 (1978), this Court stated:

> where . . . there has been no pretrial identification procedure at all, there can be no requirement of a judicial determination of the independence and reliability of the in-court identification, for there has been no pretrial procedure upon which the in-court identification should depend. It further follows that, in the absence of pretrial identification procedures, formal findings of fact and conclusions of law regarding the independence and reliability of the identification are not required, for there are no relevant facts upon which to base a finding of the identification's independent origins.

*Id.* at 187, 250 S.E. 2d at 200.

State v. Shaw

Since there was no pre-trial identification of the defendant by the victim, it was not error for the trial judge to deny defendant's request for a *voir dire* examination. The accuracy of in-court identification testimony, in the absence of pre-trial identification procedures, is a proper subject for cross-examination and resolution by the jury. *State v. Cox and State v. Ward and State v. Gary,* 281 N.C. 275, 188 S.E. 2d 356 (1972). *Accord Watkins v. Sowders,* 449 U.S. 341, 66 L.Ed. 2d 549 (1981).

[2] Defendant brings forward as his second assignment of error the failure of the trial court to instruct the jury on identification. Defendant requested that the pattern jury instruction on identification be given. Because identification was a substantial feature of his case, defendant argues that the failure of the trial judge to give this instruction was error.

We agree with defendant that an instruction to the jury on identification was warranted. It is the duty of the trial court to instruct the jury on all substantial features of a case raised by the evidence. *State v. Farrell,* 300 N.C. 157, 265 S.E. 2d 210 (1980). The purpose of such a charge to the jury is to give a clear instruction to assist the jury in an understanding of the case and in reaching a correct verdict. Since defendant's defense was alibi, the identity of the perpetrator of the crimes charged was a substantial feature of the case.

The State argues that the trial judge did in fact instruct the jury on identification. Specifically, the State contends that the trial judge gave the identical instruction approved by this Court in *State v. Green,* 305 N.C. 463, 290 S.E. 2d 625 (1982). We agree with the State that the *Green* instruction adequately provides guidance to the jury on this substantial feature of the case. The *Green* instruction provided:

the State has the burden of proving the identity of the defendant as the perpetrator of the crimes charged beyond a reasonable doubt. This means that you, the jury, must be satisfied beyond a reasonable doubt that the defendant was the perpetrator of each of the crimes charged before you may return a verdict of guilty as to that particular crime.

*Id.* at 476, 290 S.E. 2d at 633. Our review of the record, however, reveals no instance where the trial judge in the instant case gave

this instruction. We find the record silent. Because defendant's request for the instruction was correct in law and supported by the evidence in the case, the trial court was required to give the instruction, at least in substance. *State v. Howard*, 274 N.C. 186, 162 S.E. 2d 495 (1968). Failure to do so was error.

We must now determine whether this error was prejudicial. N.C.G.S. § 15A-1443(a) provides in part:

(a) A defendant is prejudiced by errors relating to rights arising other than under the Constitution of the United States when there is a reasonable possibility that, had the error in question not been committed, a different result would have been reached at the trial out of which the appeal arises. The burden of showing such prejudice under this subsection is upon the defendant.

N.C.G.S. § 15A-1443(a) (1983).

Under this provision, in order to receive a new trial, defendant has the burden of showing prejudice, that is, that there is "a reasonable possibility that, had the error in question not been committed, a different result would have been reached at the trial." *Id.* Defendant has not met this burden.

Defendant contends that Ms. Shepard never definitely identified him as the perpetrator of the crimes. He further contends that the jurors were not aware that they must be satisfied beyond a reasonable doubt of his identity as the perpetrator before they could find him guilty of the crimes charged. After a careful review of the entire transcript, we are satisfied that, under the facts of this case, the jury was not misled as to the standard to be applied in determining the guilt or innocence of defendant.

In his closing argument to the jury, defendant's attorney essentially contended that someone other than defendant committed the offenses. He argued:

We're not contending that these aren't very serious crimes. . . . But the important thing is that no one during the whole course of the evidence this week identified my client as the person who went in the house that night.

\* \* \* \*

In this case the State is contending that the defendant took property belonging to Miss Shepard, those quarters, and that—that he carried them away, and that, you know, there's no question that Miss Shepard didn't consent to that. However, there's no one who actually saw him take those quarters out of there. Okay? I mean, there was someone there, as Miss Shepard testified, who went after those quarters, but not my client.

The trial judge then repeatedly informed the jury that to return a guilty verdict, they must be satisfied that *this* defendant committed the crime charged. Specifically, the trial judge charged "if you find from the evidence *beyond a reasonable doubt* that on or about July 25th, 1985, that *Leonard Shaw* broke and entered Marjorie Shepard's dwelling without her consent in the nighttime . . . it would be your duty to return a verdict of guilty of burglary in the first degree." (Emphasis added.) Similarly, as to the charge of felonious larceny, the jury was instructed that they must find *beyond a reasonable doubt* "that *Leonard Shaw* took and carried away Marjorie Shepard's coins without her voluntary consent . . . ." (Emphasis added.) A like instruction was given for the charge of assault with a deadly weapon inflicting serious injury.

The evidence pointing to defendant as the perpetrator of the offenses, though circumstantial, was very strong and essentially uncontradicted. The emphasis of the defense, throughout the proceedings, was upon its challenge of the identification of the defendant as the perpetrator of the crimes. We are convinced that, notwithstanding the trial court's failure to give the requested identification charge, the jury was satisfied beyond a reasonable doubt that this defendant committed the crimes charged. We are therefore convinced that the same result would have been reached by the jury had the error in question not been committed. Defendant thus has suffered no prejudice. *See* N.C.G.S. § 15A-1443(a) (1983).

[3] Defendant next argues that the trial judge erred when ruling on evidentiary issues by coaching the prosecutor as to the manner of presenting his case, thus impermissibly expressing an opinion. Defendant cites several instances where he claims the trial judge's comments constituted an expression of an opinion which

prejudiced the jury. In two exchanges, the trial court sustained objections by the defendant to questions asked by the prosecutor in the presence of the jury. Specifically, the trial court stated in one exchange, "[w]ell, as phrased, sustained" and in another, "[w]ell, sustained for the moment." Defendant argues that the cumulative effect of these remarks constituted an improper expression of opinion by revealing the trial court's alignment with the State's cause.

N.C.G.S. § 15A-1222 provides that a "judge may not express during any stage of the trial, any opinion in the presence of the jury on any question of fact to be decided by the jury." N.C.G.S. § 15A-1222 (1983). We decline to hold that these relatively innocuous comments constitute an improper expression of opinion. To so hold would stretch the general prohibition of N.C.G.S. § 15A-1222 far beyond reasonable limits. We are not persuaded by defendant's argument.

Defendant cites additional comments made by the trial judge out of the presence of the jury and argues that they also improperly expressed an opinion of the trial court. Since the jury did not hear these comments there could have been no resulting prejudice to the defendant. This assignment therefore has no merit.

Defendant also contends that the trial judge committed reversible error by failing either to intervene *ex mero motu* during the State's closing argument to the jury, or to take corrective action with respect to incompetent and inflammatory matters placed before the jury. Because the defendant failed to object to the alleged improprieties in the State's final argument, appellate review is limited to whether the prosecutor's remarks were so extremely or grossly improper that the trial court should have intervened on its own motion. *State v. King*, 299 N.C. 707, 264 S.E. 2d 40 (1980).

[4] First, defendant contends that the prosecutor misstated the evidence when he told the jurors that Ms. Shepard had testified that she checked "the bowl and the sink" in her bathroom after defendant had used it the day he worked in her yard. The actual testimony of Ms. Shepard was that defendant remained in her bathroom for about two minutes and did not flush the toilet.

When asked if she had gone into the bathroom to check the toilet, she replied that she did not need to because it was not flushed.

We do not find the characterization of the evidence by the State to be so extremely or grossly improper as to have prejudiced the jury in its deliberations. Moreover, the closing arguments of both counsel were preceded by the trial judge instructing the jury that:

> if any of these good lawyers in their closing speeches to you state anything to be a fact or be the evidence in a way that differs in the slightest from your own recollection and recall of what has been testified to here, then you will disregard what these lawyers have said the evidence is to the extent that it differs from your own recollection, because you and you alone are here as the judges of the facts and therefore you alone determine what the witnesses have said or as to any other evidence in the case.

Any impropriety in the argument was not so severe as to require the trial court to intervene *ex mero motu. State v. Martin*, 322 N.C. 229, 367 S.E. 2d 618 (1988).

[5]  Similarly, defendant, not having objected at trial, assigns as error the trial judge's failure to intervene when the prosecutor compared the function of the jury to that of an "MIT computer." The prosecutor stated that if the information produced by this trial was put into a computer the chances of the computer not finding defendant guilty would be "one in maybe ten million." Assuming, *arguendo*, that the statements of which defendant complains were improper, we likewise find that the impropriety was not so gross or excessive as to require the trial judge to intervene *ex mero motu. Id.*

Other statements upon which this assignment of error was based were not made the subject of exceptions noted in the record. Therefore, these alleged errors are not properly before this court. N.C.R. App. P., Rule 10(a).

[6]  Defendant next contends that he was deprived of effective assistance of counsel when the trial court refused to allow defendant's brother to sit at counsel's table and assist defense counsel in selecting prospective jurors. Defendant cites no authority for a right to have anyone other than legal counsel sit at counsel's

table during the selection of a jury. Even if defendant had such a right, he suffered no prejudice in the instant case.

Defendant's brother was allowed to sit directly behind defense counsel during jury selection and to communicate with the defense counsel. The concern of defendant was that his counsel have the benefit of his brother's wisdom during jury selection. The ruling of the trial judge merely restricted the area in which defendant's brother could be seated. His action did not actually or constructively prevent defendant's brother from communicating with defense counsel and therefore did not chill defendant's right to effective assistance of counsel. *See Strickland v. Washington,* 466 U.S. 668, 80 L.Ed. 2d 674 (1984).

[7] Defendant, in his last argument, contends that the trial court committed prejudicial error in allowing a law enforcement officer to express an opinion on a matter outside of his area of expertise. We find no error.

Officer James Adams of the Durham Police Department was qualified as an expert in the field of identification and comparison of latent finger and palm prints. Subsequently, on direct examination, the officer testified that he and Detective Harris measured both the tennis shoes found behind the victim's home and those belonging to defendant. He and Detective Harris measured both pairs of shoes from heel to toe with a yardstick and found both to measure eleven inches in length. It is the promulgation of the results of this measurement by Officer Adams at trial upon which defendant bases this assignment of error.

The gravamen of defendant's argument is that Officer Adams was not qualified as an expert in tennis shoe measurements and was therefore incapable of rendering such an opinion. However, Officer Adams' testimony in this regard was not the recitation of an expert opinion. The officer merely stated the length of defendant's shoe. The measuring task performed by the officer required only modest skill. Because specialized knowledge was not needed to enable this witness to measure in inches the shoe of the defendant, this testimony amounted to nothing more than lay opinion. Defendant was free to cross-examine this witness concerning the accuracy of such a measurement and to expose any perceived scientific defects.

Defendant also argues that this witness' testimony that each pair of shoes showed signs of wearing on the heel and ball areas were matters outside the expertise of this witness. To this we also disagree. No specialized expertise or training is required for one to determine that two shoes share wear patterns. Such a determination may be made by merely observing each pair. The jurors had the opportunity to observe the shoes themselves and to make independent determinations as to whether the shoes shared wear patterns. This opinion was lay opinion rationally based upon the perceptions of the witness. *See* N.C.G.S. § 8C-1, Rule 701 (1986). Since this opinion required no expertise, defendant's argument that this testimony was outside the witness' realm of expertise is untenable.

The convictions and their resulting sentences remain undisturbed as our review of the trial of defendant has revealed no reversible error.

No error.