STATE OF NORTH CAROLINA v. RODNEY MICHAEL FISHER

No. COA04-1155

(Filed 5 July 2005)

## 1. Confessions and Incriminating Statements— custodial statements—voluntariness—intoxication

The trial court did not commit plain error in a prosecution for assault with a deadly weapon with intent to kill inflicting serious injury and multiple assaults with a deadly weapon with intent to kill by denying defendant's motion to suppress his custodial statement to an officer even though defendant contends he was intoxicated and does not remember waiving his Miranda rights, because: (1) a confession is admissible unless defendant is so intoxicated that he is unconscious of the meaning of his words; (2) in the instant case the officer testified that he read defendant the Miranda warnings, defendant acknowledged that he understood the warnings, and thereafter defendant waived his rights and agreed to answer any of the officer's questions; (3) the officer testified that he did not smell alcohol on defendant, that defendant did not seem impaired in the slightest, and that defendant made no indication that he had any difficulty at all in understanding the officer's questions; (4) if there is a conflict between the State's evidence and defendant's evidence on material facts, it is the duty of the trial court to resolve the conflict and such resolution will not be disturbed on appeal; and (5) an unsigned statement taken in longhand is not precluded from admission if it contains a record of defendant's actual responses to the recorded questions.

## 2. Assault— deadly weapon with intent to kill inflicting serious injury—motion to dismiss—sufficiency of evidence— perpetrator of crime

The trial court did not err by denying defendant's motion to dismiss the charges of assault with a deadly weapon with intent to kill inflicting serious injury and multiple assaults with a deadly

weapon with intent to kill, because viewing the evidence in the light most favorable to the State demonstrates that there was sufficient evidence to demonstrate that defendant was the perpetrator of the crimes for which he was charged including that: (1) defendant admitted that he took the gun from the man who fired the initial shot and thereafter followed three men down the street with it while firing eight or nine times at them while they were running; (2) the victim was standing on the corner of the street where defendant was firing the shots and was hit by a bullet from one of these gunshots; and (3) a witness testified that she heard eight total gunshots and the victim testified that she heard eight or nine total gunshots.

**3. Appeal and Error— preservation of issues—continuation of trial after dismissal of juror—failure to object**

Although defendant contends the trial court erred in a prosecution for assault with a deadly weapon with intent to kill inflicting serious injury and multiple assaults with a deadly weapon with intent to kill by continuing the trial following the dismissal of a juror due to his sleeping problem, this assignment of error is dismissed because: (1) there is no indication in the record that defendant moved for a mistrial or offered any objection to the trial court's continuation of the trial with an alternate juror; and (2) although defendant assigned plain error to this issue on appeal, plain error review is reserved for instructional errors or the admissibility of evidence.

**4. Assault— failure to give curative instruction—misstatement of charges**

The trial court did not commit plain error by failing to give a curative instruction sua sponte following a prior misstatement of the charges against defendant when the trial court informed the jury at the opening of trial that defendant was being tried in part for the crime of assault with a deadly weapon inflicting serious injury on one of the victims and later at trial the State advised the court that the calendar incorrectly reflected that defendant was indicted for assault with a deadly weapon inflicting serious injury rather than assault with a deadly weapon with intent to kill inflicting serious injury for the pertinent victim, because: (1) the trial court correctly instructed the jury that defendant was charged with assault with a deadly weapon with intent to kill inflicting serious injury; (2) the trial court correctly instructed the jury regarding the elements of the offense; and (3)

STATE v. FISHER

[171 N.C. App. 201 (2005)]

defendant failed to demonstrate how the alleged error impacted the jury's verdict.

**5. Evidence— lay opinion—difference in shell casings fired from an automatic weapon versus a revolver**

The trial court did not commit plain error in a prosecution for assault with a deadly weapon with intent to kill inflicting serious injury and multiple assaults with a deadly weapon with intent to kill by failing to instruct the jury to disregard a detective's testimony following a sustained objection about the difference in shell casings fired from an automatic weapon versus a revolver, because: (1) the detective's testimony regarding the location of shell casings when a bullet is fired from two different weapons was not based upon any specialized expertise or training, but merely upon his own personal experience and observations in firing different kinds of weapons; and (2) having failed to qualify the detective as an expert in shell casing ballistics, the State was not prevented from eliciting lay opinion testimony from him.

**6. Discovery— destruction of shell casing prior to trial—failure to request evidence—failure to show bad faith**

A defendant's due process rights were not violated in a prosecution for assault with a deadly weapon with intent to kill inflicting serious injury and multiple assaults with a deadly weapon with intent to kill by the destruction of shell casings prior to his trial, because: (1) there is no indication in the record that defendant filed a discovery request for the shell casings; and (2) defendant has neither alleged nor demonstrated any bad faith on the part of the prosecutor or police department in the destruction of the shell casings.

Appeal by defendant from judgment entered 2 June 2003 by Judge Andy Cromer in Forsyth County Superior Court. Heard in the Court of Appeals 12 May 2005.

*Attorney General Roy Cooper, by Special Deputy Attorney General Thomas J. Ziko, for the State.*

*Hall & Hall Attorneys at Law, P.C., by Susan P. Hall, for defendant-appellant.*

TIMMONS-GOODSON, Judge.

Rodney Michael Fisher ("defendant") appeals his convictions for one count of assault with a deadly weapon with intent to kill inflicting serious injury and three counts of assault with a deadly weapon with intent to kill. For the reasons discussed herein, we hold that defendant received a trial free of prejudicial error.

The State's evidence presented at trial tends to show the following: On the night of 2 June 1998, defendant was at the residence of Jay Irvin ("Irvin") on 24th Street in Winston-Salem, North Carolina. At approximately 10:00 p.m., Irvin and defendant were approached by Ray Von Rousseau ("Ray Von") and Marlo Rousseau ("Marlo"). Shortly thereafter, a confrontation between the four men ensued. At some point during the confrontation, defendant pointed a weapon at Ray Von and Marlo. As Ray Von and Marlo were telling defendant and Irvin that they did not have weapons, Donald Lewis Rousseau ("Donald") approached the men. Donald pointed a weapon at defendant, and the two began to argue over whether Ray Von and Irvin should fight. Ray Von and Irvin thereafter began fighting, and, at some point during the fight, Ray Von stabbed Irvin.

After the fight between Ray Von and Irvin ended, Ray Von, Donald, and Marlo heard a gunshot. Donald and Marlo believed Ray Von had been shot, and they helped Ray Von up from the ground. The three men then began walking down 24th Street, toward Cleveland Avenue and away from Irvin's residence. As they turned onto Cleveland Avenue, Donald, Ray Von, and Marlo heard gunshots fired from behind them. The three men separated, and Ray Von ran toward the corner of Cleveland Avenue and 23rd Street. As he reached the corner of Cleveland Avenue and 23rd Street, Ray Von heard a woman scream and fall to the ground.

April Penn Bailey ("Bailey") and Debra Boyd ("Boyd") were standing on the corner of Cleveland Avenue and 23rd Street when they heard gunshots coming from the direction of 24th Street. Immediately after hearing the first shot, Bailey was struck by a bullet that entered her stomach area. Bailey fell to the ground and began crawling into a nearby manhole. Bailey thereafter heard more gunshots fired from 24th Street.

After learning that Bailey had been shot, Boyd ran to a nearby store for help. As she was running to the store, Boyd heard more gunshots fired from the direction of 24th Street. In total, Boyd heard eight gunshots and Bailey heard eight or nine gunshots.

STATE v. FISHER

[171 N.C. App. 201 (2005)]

Winston-Salem Police Department Officer Priscilla Thomas ("Officer Thomas") was dispatched to the area of Cleveland Avenue and 24th Street to investigate an alleged assault with a deadly weapon. Upon arrival at the scene, Officer Thomas learned that Irvin, the alleged victim of the assault, had been transported to the hospital. Officer Thomas went to the hospital and spoke to Irvin, who informed Officer Thomas that he did not want to prosecute the individual who stabbed him. Officer Thomas thereafter ordered the destruction of the evidence gathered by her fellow law enforcement officers, including seven shell casings collected from the corner of Cleveland Avenue and 24th Street.

At or around the same time Officer Thomas was dispatched to the area of Cleveland Avenue and 24th Street, Winston-Salem Police Department Officer Douglas McGraw ("Officer McGraw") was dispatched to the area to investigate a shooting. As he arrived at the corner of Cleveland Avenue and 23rd Street, Officer McGraw noticed a large crowd standing at the intersection. Officer McGraw and other law enforcement officers began interviewing witnesses in the area. Based upon the information that the officers collected, a warrant was subsequently issued for defendant's arrest.

On 17 June 1998, Officer McGraw observed defendant in the passenger seat of a vehicle traveling in Winston-Salem. Officer McGraw initiated a vehicle stop and placed defendant under arrest. During the arrest, Officer McGraw retrieved a loaded handgun from the portion of the dashboard directly in front of the passenger seat. Defendant was served with an arrest warrant and transferred to the Forsyth County Detention Center for an interview. During the interview, Officer McGraw asked defendant questions and recorded defendant's answers in a report.

On 13 August 2001, Defendant was indicted for one count of assault with a deadly weapon with intent to kill inflicting serious injury upon Bailey, one count of assault with a deadly weapon with intent to kill Ray Von, one count of assault with a deadly weapon with intent to kill Donald, and one count of assault with a deadly weapon with intent to kill Marlo. At trial, Officer McGraw read the following pertinent narration from his report:

> I transported [defendant] to the jail and interviewed him in the BT room. . . . I asked [defendant] if he would start from the beginning and tell me the entire story. He began saying "the whole thing began at J's lounge . . . . J's lounge is located in the 2500

block of north Liberty Street. Ray Von Rousseau thought Jay Irvin hit him from behind but Jay didn't hit anyone. On June 2nd of 1998, Ray Von, Marlo and Donald Rousseau confronted Jay in front of his residen[ce] .... Ray Von and Jay were fist fighting and the next thing I knew was that Jay had been stabbed. I ran to help Jay. After I got to him I helped him to his feet and I noticed a lot of blood coming from his chest. When Jay got on his feet he fired one shot at Ray Von who was running toward Cleveland Avenue. Ray Von fell as if he had been shot but he hadn't. Donald and Marlo kept running and I took the gun from Jay and followed. Jay got in the car and left for the hospital. While I followed—while I was following the [Rousseaus] I fired eight or nine times at them while they were running from 24th street towards 23rd on Cleveland Avenue. . . . I went to [the] hospital to check on my cousin Jay. While I was at the hospital I saw the ambulance bring [Bailey] in the emergency [room]. I didn't know that she ha[d] been shot. I was in the room with Jay when I heard that she had been shot.["] I asked [defendant] if he had shot April. [Defendant] said "I didn't shoot her I will admit that I was shooting but I don't think I shot her."

On cross-examination, Officer McGraw read further from his report, which stated that after making the above-detailed statement, defendant informed Officer McGraw that he had an attorney and had "telephoned [Bailey] and her father and told them that [he] wasn't the person who shot her."

Defendant presented evidence from Irvin, Irvin's wife, Tanesha Irvin ("Tanesha"), and Larry Puryear ("Puryear"). Tanesha testified that she saw Irvin and Ray Von fighting, and that she saw defendant "pull[] his gun out" while Donald was approaching the fight. Although she testified that she heard gunshots fired on the street after the fight, Tanesha testified that she did not see defendant shoot the weapon that he was holding.

Irvin testified that on 2 June 1998, defendant was present at a fight between Irvin and Ray Von. Irvin testified that after he and Ray Von fought, he realized he had been stabbed. Irvin further testified that, after being stabbed, he drew his gun and fired one shot at Ray Von in order to prevent Ray Von from approaching him again.

Puryear testified that he saw the fight between Irvin and Ray Von, and that he also saw defendant point a gun at Donald during the fight.

Puryear testified that after Irvin "pulled out a gun and shot one time[,]" he transported Irvin to the hospital.

On 24 July 2002, the jury found defendant guilty of assault with a deadly weapon with intent to kill inflicting serious injury upon Bailey, assault with a deadly weapon with intent to kill Ray Von, assault with a deadly weapon with intent to kill Donald, and assault with a deadly weapon with intent to kill Marlo. The trial court subsequently determined that defendant had a prior felony record level III, and on 2 June 2003, the trial court sentenced defendant to a total of 218 to 269 months imprisonment. Defendant appeals.

The issues on appeal are: (I) whether the trial court erred by denying defendant's motion to suppress his custodial statement to Officer McGraw; (II) whether the trial court erred by denying defendant's motion to dismiss the charges against him; (III) whether the trial court erred by continuing the trial following the dismissal of a juror; (IV) whether the trial court erred by failing to give a curative instruction following a prior misstatement of the charges against defendant; (V) whether the trial court erred by failing to instruct the jury to disregard testimony following a sustained objection; and (VI) whether defendant's due process rights were denied by the destruction of the shell casings.

**[1]** Defendant first argues that the trial court committed plain error by denying his motion to suppress Officer McGraw's report of defendant's custodial interview. Defendant asserts that the trial court erred by finding that defendant voluntarily waived his *Miranda* rights and made the statement in the report. We disagree.

We note initially that although he filed a pretrial motion *in limine*, defendant did not object at trial to the State's questions regarding Officer McGraw's report. In order to preserve a question for appellate review, N.C. R. App. P. 10(b)(1) (2005) requires "the complaining party to obtain a ruling upon the party's request, objection or motion." When the party's objection involves the admissibility of evidence, the complaining party must present an objection when the evidence is introduced at trial, even where, as here, the objection was previously considered in a motion *in limine. State v. Hayes,* 350 N.C. 79, 80, 511 S.E.2d 302, 303 (1999) (per curiam); *but see* N.C. Gen. Stat. § 8C-1, Rule 103(a)(2) (2003) (effective October 1, 2003) ("Once the court makes a definitive ruling on the record admitting or excluding evidence, either at or before trial, a party need not renew an objec-

tion or offer of proof to preserve a claim of error for appeal."). Nevertheless, a criminal defendant may preserve an evidentiary issue where he or she assigns plain error to the issue on appeal. *See* N.C. R. App. P. 10(c)(4).

In the instant case, defendant asserts that the trial court committed plain error by denying his motion *in limine*. In support of this assertion, defendant contends that there was evidence introduced at the suppression hearing tending to show that he was intoxicated while being interviewed by Officer McGraw, and therefore he was unable to voluntarily waive his right to an attorney.

"Plain error exists where, after reviewing the entire record, the claimed error is so fundamental, so basic, so prejudicial, or so lacking in its elements that justice could not have been done." *State v. Fleming*, 350 N.C. 109, 132, 512 S.E.2d 720, 736, *cert. denied*, 528 U.S. 941, 145 L. Ed. 2d 274 (1999). "A prerequisite to our engaging in a 'plain error' analysis is the determination that the [trial court's action] constitutes 'error' at all." *State v. Torain*, 316 N.C. 111, 116, 340 S.E.2d 465, 468, *cert. denied*, 479 U.S. 836, 93 L. Ed. 2d 77 (1986). In the instant case, we conclude that the trial court did not err.

A trial court's findings of fact regarding a motion to suppress are conclusive on appeal if supported by competent evidence. *State v. Fernandez*, 346 N.C. 1, 11, 484 S.E.2d 350, 357 (1997). The trial court's findings of fact must support its conclusions of law, and the trial court's conclusions must be "legally correct, reflecting a correct application of applicable legal principles to the facts found." *Id.* (citing *State v. Payne*, 327 N.C. 194, 208-09, 394 S.E.2d 158, 166 (1990), *cert. denied*, 498 U.S. 1092, 112 L. Ed. 2d 1062 (1991)).

In the instant case, the trial court found that defendant "was responsive to questions asked about the shooting . . . and the events surrounding it[,]" that defendant "did understand what was being told to him and asked by" Officer McGraw, and that defendant "did understand the Miranda rights given and did not ask for a lawyer or indicate that he was represented by a lawyer until the conclusion of the interview." The trial court chose not to make "any findings as to whether [] defendant had consumed any alcohol or not," but it did find that "defendant was responsive and understood the rights that were indicated regardless of whether he had consumed any alcohol or not in the hours previous to the interview."

Defendant contends that the trial court's findings that he voluntarily waived his constitutional rights are unsupported by com-

petent evidence. In support of this contention, defendant cites his own testimony during the suppression hearing, in which defendant stated that he was arrested at approximately 2:30 a.m., after having consumed "around 15 shots of Seagram's Gin" at a local bar. Defendant testified that he did not recall Officer McGraw reading him his *Miranda* rights, and he did not recall making a statement to Officer McGraw. However, defendant did recall "repeatedly" telling Officer McGraw that he had hired an attorney and needed to use the restroom.

"In determining the voluntariness of the confession and the waiver of *Miranda* rights, we look to the totality of the circumstances." *State v. McKoy*, 323 N.C. 1, 21, 372 S.E.2d 12, 23 (1988), *sentence vacated on other grounds*, 494 U.S. 433, 108 L. Ed. 2d 369 (1990). "While intoxication is a circumstance critical to the issue of voluntariness, intoxication at the time of a confession does not necessarily render it involuntary. It is simply a factor to be considered in determining voluntariness." *Id.* at 22, 372 S.E.2d at 23 (citations omitted). "The confession 'is admissible unless the defendant is so intoxicated that he is unconscious of the meaning of his words.' " *Id.* (quoting *State v. Oxendine*, 303 N.C. 235, 243, 278 S.E.2d 200, 205 (1981)).

> Unless a defendant's intoxication amounts to mania—that is, unless he is so drunk as to be unconscious of the meaning of his words—his intoxication does not render inadmissible his confession of facts tending to incriminate him. The extent of his intoxication when the confession was made, however, is a relevant circumstance bearing upon its credibility, a question exclusively for the jury's determination.

*State v. Logner*, 266 N.C. 238, 243, 145 S.E.2d 867, 871, *cert. denied*, 384 U.S. 1013, 16 L. Ed. 2d 1032 (1966).

In the instant case, Officer McGraw testified at the suppression hearing that he read defendant "the Miranda warnings as printed on the Miranda warnings card[,]" and that defendant "acknowledged that he understood the warnings" and "waived his right and agreed to answer any of [Officer McGraw's] questions." Officer McGraw further testified that he did not smell alcohol on defendant, that defendant was not stumbling or slurring his speech, that defendant did not seem impaired "in the slightest[,]" and that defendant "made no indication that he had any difficulty at all" in understanding Officer McGraw's questions. Although we note that defendant presented testimony to the contrary, we further note that " '[i]f there is a con-

flict between the [S]tate's evidence and defendant's evidence on material facts, it is the duty of the trial court to resolve the conflict and such resolution will not be disturbed on appeal.' " *Fernandez*, 346 N.C. at 11, 484 S.E.2d at 357 (quoting *State v. Chamberlain*, 307 N.C. 130, 143, 297 S.E.2d 540, 548 (1982)). Therefore, in light of the foregoing, we conclude that ample evidence supports the trial court's determination regarding defendant's intoxication and voluntary waiver of his *Miranda* rights.

Defendant maintains that the trial court erred by concluding that his statement to Officer McGraw was admissible, in that he did not sign it or otherwise acquiesce to its contents. We disagree.

Generally, a "statement of an accused reduced to writing by another person, where it was freely and voluntarily made, and where it was read to or by the accused and signed or otherwise admitted by him as correct shall be admissible against him." *State v. Boykin*, 298 N.C. 687, 693, 259 S.E.2d 883, 887 (1979), *cert. denied*, 446 U.S. 911, 64 L. Ed. 2d 264 (1980); *see State v. Cole*, 293 N.C. 328, 334, 237 S.E.2d 814, 818 (1977). In *State v. Walker*, 269 N.C. 135, 139-41, 152 S.E.2d 133, 137-39 (1967), our Supreme Court held that a defendant must indicate his acquiescence in the correctness of a written statement in order for it to be tendered by the State as his confession. However, our courts have since recognized that "the written instrument is admissible, without regard to the defendant's acquiescence, if it is a 'verbatim record of the questions [asked] . . . and the answers' given by him." *State v. Bartlett*, 121 N.C. App. 521, 522, 466 S.E.2d 302, 303 (1996) (quoting *State v. Byers*, 105 N.C. App. 377, 383, 413 S.E.2d 586, 589 (1992)); *see Cole*, 293 N.C. at 334-35, 237 S.E.2d at 818 (officer wrote down statements in longhand in "defendant's own words" and swore they were defendant's actual words); *State v. Fox*, 277 N.C. 1, 25, 175 S.E.2d 561, 576 (1970) (sheriff testified that the transcription was an "exact copy" of the conversation between himself and defendant). Therefore, the Court's decision in *Walker* "does not preclude admission of an unsigned statement taken in longhand" if it contains a record "of a defendant's actual responses to the recorded questions." *State v. Wagner*, 343 N.C. 250, 256-57, 470 S.E.2d 33, 36 (1996).

In the instant case, Officer McGraw's report of his interview with defendant contains a record of his questions as well as the answers provided by defendant. Officer McGraw testified at the suppression hearing that defendant made the statement contained in the report, and at trial Officer McGraw testified that he "asked the questions to

[defendant], [defendant] answered and I wrote [defendant's] answer down in my report." There is no indication in the record that Officer McGraw's report contains "merely [his own] impressions of the import of defendant's statements." *Cole*, 293 N.C. at 334-35, 237 S.E.2d at 818. Instead, the sworn testimony indicates that the report contains the actual answers provided by defendant in response to Officer's McGraw's actual questions. Therefore, in light of the foregoing, we conclude that the trial court did not err by admitting into evidence defendant's statement to Officer McGraw following his arrest. Accordingly, defendant's first argument is overruled.

[2] Defendant next argues that the trial court erred by denying his motion to dismiss the charges against him. Defendant asserts that the State produced insufficient evidence to demonstrate that he was the perpetrator of the crimes. We disagree.

When considering a motion to dismiss, the trial court must determine whether "substantial evidence exists to support each element of the crime charged and that [the] defendant was the perpetrator[.]" *State v. Morgan*, 359 N.C. 131, 161, 604 S.E.2d 886, 904 (2004). "[T]he trial court must view the evidence in the light most favorable to the State, giving the State the benefit of all reasonable inferences." *Id.* "[C]ontradictions and discrepancies do not warrant dismissal of the case—they are for the jury to resolve." *State v. Earnhardt*, 307 N.C. 62, 67, 296 S.E.2d 649, 653 (1982).

In the instant case, the evidence tends to show that after the fight between Ray Von and Irvin, someone fired a shot at Ray Von. Donald, Marlo, and Ray Von thereafter ran down 24th Street and turned onto Cleveland Avenue toward 23rd Street. While they were running, Donald, Marlo, and Ray Von heard several more shots fired from behind them. A bullet from one of these gunshots injured Bailey, who was standing on the corner of 23rd Street and Cleveland Avenue. Although both Irvin and Puryear testified that Irvin fired the initial shot at Ray Von, both Irvin and Puryear further testified that Puryear transported Irvin to the hospital after the initial shot was fired. In his statement to Officer McGraw, defendant admitted that he took the gun from Irvin after Irvin fired the initial shot, and that he thereafter followed Donald, Marlo, and Ray Von down the street. Defendant stated that "while [he] was following [Donald, Marlo, and Ray Von], [he] fired eight or nine times at them while they were running from 24th street towards 23rd on Cleveland Avenue." Boyd testified that she heard eight total gunshots and Bailey testified that she heard eight or nine total gunshots. Considering the foregoing evidence in

the light most favorable to the State, we conclude that the State offered sufficient evidence to demonstrate that defendant was the perpetrator of the crimes for which he was charged. Accordingly, we overrule defendant's second argument.

[3] Defendant next argues that the trial court erred by continuing the trial following the dismissal of a juror. Our review of the record indicates that during the trial, the trial court dismissed one juror due to his "sleeping problem." However, there is no indication in the record that defendant thereafter moved for a mistrial or offered any objection to the trial court's continuation of the trial with an alternate juror. Although we note that defendant has assigned plain error to this issue on appeal, we also note that our Supreme Court "has only elected to review unpreserved issues for plain error that involve instructional errors or the admissibility of evidence." *State v. Carpenter*, 147 N.C. App. 386, 397, 556 S.E.2d 316, 323 (2001) (citing *State v. Steen*, 352 N.C. 227, 536 S.E.2d 1 (2000), *cert. denied*, 531 U.S. 1167, 148 L. Ed. 2d 997 (2001) and *State v. Gregory*, 342 N.C. 580, 467 S.E.2d 28 (1996)), *disc. review denied*, 355 N.C. 217, 560 S.E.2d 143, *cert. denied*, 536 U.S. 967, 153 L. Ed. 2d 851 (2002). Thus, in light of the foregoing, we conclude that defendant has failed to properly preserve this issue for appeal. Accordingly, we overrule defendant's third argument.

[4] Defendant next argues that the trial court erred by failing to give a curative instruction following a prior misstatement of the charges against him. The record reflects that, at the opening of the trial, the trial court informed the jury that defendant was being tried in part for the crime of assault with a deadly weapon inflicting serious injury upon Bailey. Later in the trial, the State advised the trial court that "the calendar did not correctly reflect what was indicted" in 98 CRS 27852, in that it appeared on the calendar that defendant was indicted for assault with a deadly weapon inflicting serious injury upon Bailey rather than assault with a deadly weapon *with intent to kill* inflicting serious injury upon Bailey. The trial court inquired as to whether either party wanted to "tell the jury about that[,]" noting that it "was not sure they paid that much attention to detail in the beginning[,]" and that "[t]hey know it is a serious assault charge." Although defendant did not request a curative instruction at that time, he now contends that the trial court committed plain error by not issuing a curative instruction *sua sponte*. We disagree.

As discussed above, "[a] prerequisite to our engaging in a 'plain error' analysis is the determination that the [trial court's ac-

tion] constitutes 'error' at all." *Torain*, 316 N.C. at 116, 340 S.E.2d at 468. Once we have determined that the trial court erred, " '[b]efore deciding that an error by the trial court amounts to "plain error," the appellate court must be convinced that absent the error the jury probably would have reached a different verdict.' " *Id.* (quoting *State v. Walker*, 316 N.C. 33, 39, 340 S.E.2d 80, 83 (1986)). In the instant case, we conclude that defendant has failed to meet this burden. Although the trial court did not give any additional instructions to the jury at the time the issue was first raised, in its charge to the jury following presentation of all the evidence, the trial court correctly instructed the jury that defendant was charged with assault with a deadly weapon with intent to kill inflicting serious injury upon Bailey. The trial court also correctly instructed the jury regarding the elements of the offense. Defendant has failed to demonstrate how the alleged error impacted the jury's verdict. Accordingly, we overrule defendant's fourth argument.

**[5]** Defendant next argues that the trial court erred by failing to instruct the jury to disregard testimony following a sustained objection. The record reflects that at trial, the State introduced testimony from Winston-Salem Police Department Detective Brian Frady ("Detective Frady"). Detective Frady testified that he was employed by the Winston-Salem Police Department as a crime scene technician, and that on 2 June 1998, he responded to the area of 24th Street and Cleveland Avenue in response to an assault with a deadly weapon call. Detective Frady stated that his investigation of the area produced seven fired shell casings, each .45 automatic caliber. During direct examination, the State asked Detective Frady to "[t]ell the jury the difference between an automatic weapon and a revolver, what happens to a shell casing[.]" Defendant objected to this question "unless he is an expert[,]" and the trial court sustained the objection. Following both parties' examination of Detective Frady regarding his experience and training, the trial court again sustained defendant's objection. The State thereafter examined Detective Frady as follows:

Q: Have you ever shot an automatic weapon?

A: Yes.

Q: Can you tell the jury what happens when you shoot an auto-
matic weapon with the shell casing[?]

A: Well the shell casing ejects out of the weapon and lands on the ground somewhere and—

Q: And have you ever shot a revolver?

A: Yes.

Q: Can you tell the members of the jury what happens when you shoot a revolver?

A: Well it depends on how many shots it is after you get through firing the last shot, you have to actually open the gun up and dump the shells out, they don't eject after each round is fired.

Q: So the difference then as you have seen it is that when a revolver is shot the shell casings stay[] within the revolver?

A: That is correct they stay in the revolver.

Q: And [with an] automatic weapon they are ejected from the gun, [is] that right?

A: That is correct.

Defendant did not object to this testimony at trial. On appeal, defendant contends that the trial court committed plain error by failing to instruct the jury to disregard the testimony. We disagree.

N.C. Gen. Stat. § 8C-1, Rule 701 (2003) provides that where a witness is not testifying as an expert witness, "his testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of his testimony or the determination of a fact in issue." In *State v. Shaw*, 322 N.C. 797, 370 S.E.2d 546 (1988), our Supreme Court affirmed the trial court's decision to allow a police officer to testify that two pairs of shoes showed similar wearing on their respective heels. The Court noted that "[n]o specialized expertise or training is required for one to determine that two shoes share wear patterns[,]" and that "[s]uch a determination may be made by merely observing each pair." *Id.* at 809, 370 S.E.2d at 552-53. Similarly, in the instant case, Detective Frady's testimony regarding the location of shell casings when a bullet is fired from two different weapons was based not upon any "specialized expertise or training," but merely upon his own personal experience and observations in firing different kinds of weapons. Having failed to qualify Detective Frady as an expert in shell casing ballistics, the State was not prevented from eliciting lay opinion testimony from him. Accordingly, we overrule defendant's fifth argument.

**[6]** Defendant's final argument is that his due process rights were violated by the destruction of the shell casings prior to his trial. Defendant asserts that the destruction of the shell casings violated his discovery rights under N.C. Gen. Stat. § 15A-903 and prevented him from proving that the weapon in his possession when he was arrested was not involved in the shooting. We disagree.

N.C. Gen. Stat. § 15A-903(e) (2003)[1] provides as follows:

Reports of Examinations and Tests.—Upon motion of a defendant, the court must order the prosecutor to provide a copy of or to permit the defendant to inspect and copy or photograph results or reports of physical or mental examinations or of tests, measurements or experiments made in connection with the case, or copies thereof, within the possession, custody, or control of the State, the existence of which is known or by the exercise of due diligence may become known to the prosecutor. In addition, upon motion of a defendant, the court must order the prosecutor to permit the defendant to inspect, examine, and test, subject to appropriate safeguards, any physical evidence, or a sample of it, available to the prosecutor if the State intends to offer the evidence, or tests or experiments made in connection with the evidence, as an exhibit or evidence in the case.

"The State has no statutory duty to provide discovery absent a request from [the] defendant." *State v. Cummings*, 346 N.C. 291, 322, 488 S.E.2d 550, 568 (1997), *cert. denied*, 522 U.S. 1092, 139 L. Ed. 2d 873 (1998). This Court has previously stated that "[w]hether the destruction [of evidence] infringes upon the rights of an accused depends upon the circumstances in each case." *State v. Anderson*, 57 N.C. App. 602, 610, 292 S.E.2d 163, 168, *disc. review denied*, 306 N.C. 559, 294 S.E.2d 372 (1982). " '[U]nless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law.' " *State v. Mlo*, 335 N.C. 353, 373, 440 S.E.2d 98, 108 (quoting *Arizona v. Youngblood*, 488 U.S. 51, 58, 102 L. Ed. 2d 281, 289 (1988)), *cert. denied*, 512 U.S. 1224, 129 L. Ed. 2d 841 (1994).

In the instant case, there is no indication in the record that defendant filed a discovery request for the shell casings, and defend-

---

1. While it does not affect our analysis in the instant case, N.C. Gen. Stat. § 15A-903 was recently amended by Session Laws 2004-154, s.4. The amended statute is applicable to cases where the trial date was set pursuant to N.C. Gen. Stat. § 7A-49.4 on or after 1 October 2004.

ant has neither alleged nor demonstrated any bad faith on the part of the prosecutor or police department in the destruction of the shell casings. Officer Thomas testified that she had "no idea [the shell casings] were related to the stabbing" of Irvin, and that after learning that Irvin did not wish to prosecute Ray Von, she ordered the destruction of the evidence gathered during the investigation of the stabbing, including the shell casings. On cross-examination, Officer Thomas testified that she "could never ascertain" if the shell casings were involved in the shootings, and therefore she "had the casings destroyed because [they] were not related to [her] stabbing case." Officer Thomas further testified that "had [she] know[n] that these two cases were related [she] would have kept the shell casings." In light of the foregoing, we conclude that defendant's due process rights were not violated by the destruction of the shell casings. Accordingly, we overrule defendant's final argument.

In light of the foregoing conclusions, we hold that defendant received a trial free of prejudicial error.

No error.

Judges McCULLOUGH and STEELMAN concur.