An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

NO. COA13-1244
NORTH CAROLINA COURT OF APPEALS

Filed: 1 April 2014

STATE OF NORTH CAROLINA

    v.

ELIJAH JONES

Columbus County
Nos. 11 CRS 52691-92, 52694-95

Appeal by Defendant from judgments entered 6 June 2013 by Judge Douglas B. Sasser in Columbus County Superior Court. Heard in the Court of Appeals 5 March 2014.

*Attorney General Roy Cooper, by Special Deputy Attorney General L. Michael Dodd, for the State.*

*Parish & Cooke, by James R. Parish, for Defendant.*

STEPHENS, Judge.

On 9 September 2011, Defendant Elijah Jones was indicted for the first-degree murder of his wife, Joan Everette, the felonious assault of Bobby Ray Shipman, and two counts of discharging a weapon into occupied vehicles. The evidence at Defendant's trial in June 2013 tended to show the following:

Defendant and Everette had a volatile relationship as evidenced by, *inter alia*, a domestic violence protective order ("DVPO") against Defendant that Everette obtained in October 2009. By the date of the murder and assault in August 2011, Everette had moved out of the marital home and was living at her mother's home. Everette and Shipman had been dating for several months, despite the fact that each was still married to other people. Defendant was aware of and unhappy about the relationship between Everette and Shipman.

On 19 August 2011, Everette's mother was in the hospital, and Shipman spent the night with Everette in her mother's home. The next morning, Everette and Shipman drove to the hospital together in Everette's car. Once in the parking lot, Shipman got into his own car and was preparing to drive away when Defendant's car suddenly pulled up between his car and Everette's. Defendant emerged from his car and pointed a handgun at Shipman. Shipman laid down on the front seat and pressed the gas pedal as multiple gunshots rang out. Shipman was struck by three bullets, but was able to drive to the hospital emergency room where he underwent surgery and ultimately survived his wounds. Everette was not so lucky. She

had been struck and killed by a single gunshot to the head while still sitting in her car.

Shortly after the shootings, Defendant turned himself in at the Columbus County Sheriff's Department. In his statement to law enforcement officers, Defendant said that he had followed his wife's car to the hospital and, when he saw Shipman emerge from the vehicle, Defendant "flipped" and started shooting. At trial, Defendant denied any domestic violence against Everette. He also testified that he had not fired at Everette and Shipman to harm them, but rather to scare them and out of fear that Shipman was going to shoot Defendant.

The jury returned guilty verdicts on all four counts. The trial court sentenced Defendant to life in prison without the possibility of parole for Everette's murder, a concurrent term of 73 to 97 months in prison for the assault on Shipman, and two consecutive terms of 25 to 39 months in prison for discharging his gun into the victims' vehicles. Defendant gave notice of appeal in open court.

*Discussion*

Defendant makes three arguments on appeal: that the trial court erred in (1) refusing to give his exact proposed jury instruction on transferred intent, (2) refusing to give his

proposed jury instruction on the absence of flight, and (3) admitting evidence of firearms seized from him as a result of the DVPO.  We find no error.


*I. Jury instruction on transferred intent*

Defendant first argues that the trial court erred in refusing to give his proposed jury instruction on transferred intent.  We disagree.

"Whether a jury instruction correctly explains the law is a question of law, reviewable by this Court *de novo*."  *State v. Barron*, 202 N.C. App. 686, 694, 690 S.E.2d 22, 29 (citation omitted), *disc. review denied*, 364 N.C. 327, 700 S.E.2d 926 (2010). "However, an error in jury instructions is prejudicial and requires a new trial only if there is a reasonable possibility that, had the error in question not been committed, a different result would have been reached at the trial out of which the appeal arises."  *State v. Castaneda*, 196 N.C. App. 109, 116, 674 S.E.2d 707, 712 (2009) (citation and internal quotation marks omitted).

"The prime purpose of a court's charge to the jury is the clarification of issues, the elimination of extraneous matters,

and a declaration and an application of the law arising on the evidence." *State v. Cameron*, 284 N.C. 165, 171, 200 S.E.2d 186, 191 (1973) (citations omitted), *cert. denied*, 418 U.S. 905, 41 L. Ed. 2d 1153 (1974).  Thus, "[i]t is the duty of the trial court to instruct the jury on all substantial features of a case raised by the evidence."  *State v. Shaw*, 322 N.C. 797, 803, 370 S.E.2d 546, 549 (1988) (citation omitted).  However, "a trial court is not required to repeat verbatim a requested, specific instruction that is correct and supported by the evidence, but that it is sufficient if the court gives the instruction in substantial conformity with the request."  *State v. Brown*, 335 N.C. 477, 490, 439 S.E.2d 589, 597 (1994) (citations omitted).

Under the doctrine of transferred intent,

> it is an accepted principle of law that where one is engaged in an affray with another and unintentionally kills a bystander or a third person, his act shall be interpreted with reference to his intent and conduct towards his adversary. Criminal liability, if any, and the degree of homicide must be thereby determined.  Such a person is guilty or innocent exactly as if the fatal act had caused the death of his adversary.  It has been aptly stated that "[t]he malice or intent follows the bullet."
>
> The doctrine of transferred intent does not require or permit one fact to be presumed based upon the finding of another fact. Instead, under the doctrine of transferred intent, it is immaterial whether the

defendant intended injury to the person actually harmed; if he in fact acted with the required or elemental intent toward someone, that intent suffices as the intent element of the crime charged as a matter of substantive law.

*State v. Locklear*, 331 N.C. 239, 245, 415 S.E.2d 726, 730 (1992) (citations, some internal quotation marks, and some brackets omitted).

Here, Defendant proposed that the trial court give four paragraphs of instructions regarding transferred intent to the jury:

> [1] If at the time Elijah Jones fired his revolver, he did so honestly believing in the need to protect himself from imminent death or serious harm, and if Elijah Jones fired his revolver to protect himself from a perceived threat from Bobby Shipman (and his belief was reasonable under the circumstances as they appeared to Elijah Jones at the moment of the perceived threat), and if a bullet fired by Elijah Jones hit and killed Joan Everett[e], then and in that event, Elijah Jones would be only as guilty as to Joan Everett[e] as he would have been had the bullet struck Bobby Shipman.
>
> [2] That is, if Elijah Jones killed Joan Everett[e] unintentionally, but you find he intended to shoot Bobby Shipman and instead hit Joan Everett[e], Elijah Jones would only be as guilty or innocent as if the fatal act had caused the death of Bobby Shipman.
>
> [3] Further, if Elijah Jones' said use of deadly force against Bobby Shipman was

otherwise justified, but was executed so negligently as to endanger Joan Everett[e], nothing else appearing, then Elijah Jones would be guilty of involuntary manslaughter.

[4] That is, if the defendant, Elijah Jones, intended to harm one person but instead harmed a different person, the legal effect would be the same as if the defendant had harmed the intended victim, and if a killing of the intended person would be with malice, then the killing of the different person would also be with malice. Finally, if the defendant's intent was to act in self-defense, and without malice, then that intent would also be transferred to the actual victim.

The court instructed the jury by reading paragraphs one and four, but not paragraphs two and three.

As Defendant concedes in his brief, the first paragraph accurately states the law regarding transferred intent as applicable in this case. However, Defendant contends that paragraph two was "necessary as a short[,] concise, explanatory mandate" and as "a clarification of a complex concept[.]" Defendant cites no authority for the proposition that an accurate instruction on a legal concept must be followed by further clarification and explanation, and we know of none. Indeed, while the trial court did not "repeat verbatim [Defendant's] requested, specific instruction[,]" by his own admission the court gave an "instruction in substantial

conformity with the request." *See Brown*, 335 N.C. at 490, 439 S.E.2d at 597. The trial court did not err in instructing the jury on the doctrine of transferred intent, and accordingly, Defendant's argument is overruled.

*II. Jury instruction on absence of flight*

Defendant next argues that the trial court erred in denying his proposed jury instruction on the absence of flight. We disagree.

Defendant requested that the court give an instruction on the "logical converse" of the pattern jury instruction which permits a jury to consider a defendant's flight as evidence suggesting consciousness of guilt, to wit, that *absence* of flight (or turning oneself in to the authorities, as occurred here) can be considered as showing the lack of any consciousness of guilt. Defendant acknowledges that "[o]ur Courts have held differently[,]" citing *State v. Burr*, 341 N.C. 263, 461 S.E.2d 602 (1995), *cert. denied*, 517 U.S. 1123, 134 L. Ed. 2d 526 (1996); *State v. Wilcox*, 132 N.C. 1120, 44 S.E. 625 (1903); and *State v. Thomas*, 34 N.C. App. 594, 239 S.E.2d 288 (1977), *disc. review denied*, 294 N.C. 445, 241 S.E.2d 846, *cert. denied*, 439 U.S. 926, 58 L. Ed. 2d 318 (1978), but asserts that the "position of the court flies in the face of logic." Defendant's

argument on this issue flies in the face of precedent, the guiding principle of this Court. *See, e.g.*, *In re Appeal from Civil Penalty*, 324 N.C. 373, 384, 379 S.E.2d 30, 37 (1989) ("Where a panel of the Court of Appeals has decided the same issue, albeit in a different case, a subsequent panel of the same court is bound by that precedent, unless it has been overturned by a higher court."). Defendant's argument is overruled.

*III. Admission of evidence of additional firearms*

Finally, Defendant argues that the trial court erred in admitting evidence of firearms seized from him as a result of the DVPO. Specifically, Defendant contends that this evidence was not relevant and was thus inadmissible. Defendant has not preserved his right to appellate review of this issue.

As a result of the DVPO Everette obtained, four firearms were seized from Defendant,[1] including the .44 Magnum revolver Defendant would later use to shoot Everette and Shipman. The other three firearms seized in 2009 were not involved in the

---

[1] The DVPO expired on 5 November 2010 and was not renewed. Thereafter, Defendant filed a motion for the return of the weapons he surrendered. By order entered 10 December 2010, the district court directed the sheriff's department to return the seized weapons to Defendant.

attack. Citing Rule of Evidence 404(b), Defendant objected when the State sought to introduce a copy of the DVPO and related documents as State's Exhibit 80. Exhibit 80 was some ten pages long with some pages printed on both sides. Included in the exhibit was a list of the firearms Defendant turned over to the Columbus County Sheriff's Department in compliance with the order. The court admitted the domestic violence order and related testimony, but agreed to give a limiting instruction pursuant to Rule 404(b). A deputy clerk of the superior court in Columbus County used the exhibit to illustrate her testimony and, *inter alia*, read the list of seized firearms to the jury.

"In order to preserve a question for appellate review, a party must have presented the trial court with a timely request, objection or motion, *stating the specific grounds for the ruling sought* if the specific grounds are not apparent." *State v. Eason*, 328 N.C. 409, 420, 402 S.E.2d 809, 814 (1991); *see also* N.C.R. App. P. 10(a)(1). Defendant did not object to Exhibit 80 on the basis of relevance per Rules of Evidence 401 or 402, but rather under Rule 404(b). Where a defendant argues a different basis for exclusion of evidence on appeal than he brought forward at trial, his objection is not preserved for appellate review. *See State v. Rayfield*, __ N.C. App. __, __, 752 S.E.2d

745, 762 (2014); *see also State v. Benson*, 323 N.C. 318, 322, 372 S.E.2d 517, 519 (1988) ("Defendant may not swap horses [concerning his argument] after trial in order to obtain a thoroughbred upon appeal.") (citation omitted). "Because Defendant did not argue plain error in the alternative, he may not seek appellate review of this issue." *Rayfield*, __ N.C. App. at __, 752 S.E.2d at 762.

NO ERROR.

Judges BRYANT and DILLON concur.

Report per Rule 30(e).