STATE OF NORTH CAROLINA v. MELVIN CURTIS FAULKNER, Defendant

No. COA06-7

(Filed 19 December 2006)

## 1. Evidence— prior crimes or bad acts—purpose other than bad character

The trial court did not abuse its discretion in a prosecution of defendant for the second-degree murder of his girlfriend's infant son by denying defendant's motion to suppress testimony from his girlfriend's mother regarding a June 2001 incident in which the girlfriend took an overdose of sleeping pills, defendant refused to call 911, defendant initially refused to give the girlfriend's mother the street address when she called 911, and defendant told his girlfriend's mother that he did not know what she took nor did he care whether she died, because: (1) the defense was attempting to suggest that defendant's girlfriend may have been the perpetrator or that the girlfriend's son died from an accidental fall; and (2) evidence concerning the relationship between defendant and his girlfriend was probative for a purpose other than defendant's bad character. N.C.G.S. § 8C-1, Rule 404(b).

## 2. Evidence— expert testimony—normal caretaker reaction—rebuttal evidence—opening the door to evidence

The trial court did not abuse its discretion in a prosecution of defendant for the second-degree murder of his girlfriend's infant son by overruling defendant's objection to the testimony of a State expert as to normal caretaker reaction and a profile of caretaker behavior after an injury to a child, because: (1) earlier testimony by defense experts had outlined some criteria used in determining child abuse and suggested there was an overdiagnosis and rush to judgment of child abuse; (2) in light of the defense testimony, the State expert's statements as to the parameters used to determine child abuse, and specifically the profile of normal caretaker behavior, had significant probative value as proper rebuttal evidence; and (3) even assuming arguendo that the expert's testimony would not have been permissible if offered during the State's direct case, the defense opened the door to the criteria used to determine if child abuse had occurred including what is considered normal caretaker behavior in such situations. N.C.G.S. § 8C-1, Rule 702.

## 3. Evidence— suspicions—disapproval of relationship—plain error analysis

The trial court did not commit plain error in a second-degree murder case by allowing testimony as to the suspicions of defendant's girlfriend regarding her child's death, her mother's disapproval of her relationship with defendant, and the substance of one side of a phone conversation defendant had with his father at the hospital while the child was being treated, because: (1) the State presented a significant amount of evidence at trial that showed the building tension in defendant's house in the weeks leading up to the child's death as a result of the deteriorating relationship between defendant and his girlfriend as well as of defendant's picking on the child; (2) defendant was alone at home with the child at the time the child's injuries were sustained, and defendant's behavior with emergency personnel and at the hospital was somewhat unusual; and (3) in light of the strength of the State's case against defendant, the challenged statements were unlikely to have been determinative factors in the jury's verdict.

## 4. Appeal and Error— preservation of issues—failure to argue

Although defendant contends the trial court committed plain error in a second-degree murder case by admitting testimony concerning comments from the child victim's grandmother at the child's funeral, this assignment of error is dismissed, because: (1) defendant's brief failed to offer any discussion of these comments or argument to support this assertion; and (2) assignments of error not set out in appellant's brief or in support of which no reason or argument is stated or authority cited will be taken as abandoned under N.C. R. App. P. 28(b)(6).

## 5. Evidence— opinion testimony—lay witnesses—medical condition

The trial court did not abuse its discretion or commit plain error in a second-degree murder case by admitting the opinion testimony of lay witnesses as to the minor child victim's medical condition allegedly in violation of N.C.G.S. § 8C-1, Rule 701, because: (1) as noted by defendant himself, all of the testimony being challenged was also properly admitted through other expert witnesses; (2) defendant made only the bare assertion that the testimony impacted the jury verdict, and thus the portion of his assignment of error that alleged plain error is dismissed; (3) the trial court implicitly accepted the qualifications of two emer-

gency medical personnel as expert witnesses, and defendant waived the right to raise this issue on appeal by specifically failing to object at trial to their qualifications; and (4) even if defendant had properly preserved his challenge to the testimony, the two individuals were qualified to render their opinions as to the nature of the child's injuries and the possibility that they were caused by falling out of a toddler bed, that they themselves examined, by virtue of their emergency medical training and experience when the questions and answers related specifically to their area of expertise and qualifications.

## 6. Evidence— admission of testimony—plain error analysis

The trial court did not commit plain error in a second-degree murder case by admitting testimony that defendant's girlfriend screamed at him when the two were placed near each other after their arrests, because: (1) in light of the other substantial evidence offered by the State, the admission of this testimony did not rise to the level of plain error; (2) in light of the defense theories at trial that either defendant's girlfriend inflicted the child's injuries, or they were accidental, the evidence was probative to refute those suggestions; and (3) the degree of prejudice did not substantially outweigh the probative value of the evidence.

Appeal by defendant from judgment entered 7 June 2005 by Judge E. Lynn Johnson in Superior Court, Cumberland County. Heard in the Court of Appeals 17 October 2006.

*Attorney General Roy Cooper, by Assistant Attorney General Anne M. Middleton, for the State.*

*Leslie C. Rawls for defendant-appellant.*

WYNN, Judge.

The plain error rule applies when the appellate court is "convinced that absent the error the jury probably would have reached a different verdict."[1] Here, Defendant argues that the admission of testimony from several witnesses was plain error. Because we find that the State's evidence as to Defendant's guilt was substantial enough that the testimony in question was not determinative of the jury's decision, we affirm Defendant's conviction for second-degree murder.

---

1. *State v. Cummings*, 352 N.C. 600, 636, 536 S.E.2d 36, 61 (2000) (citation and quotation omitted), *cert. denied*, 532 U.S. 997, 149 L. Ed. 2d 641 (2001).

STATE v. FAULKNER

[180 N.C. App. 499 (2006)]

On 7 June 2005, Defendant Melvin Curtis Faulkner was convicted of second-degree murder in the death of 22-month-old Jakob Waddington, the son of Defendant's girlfriend, Janet Perkins. At trial, the evidence tended to show that Defendant and Ms. Perkins met through an America Online chat room several months before she moved to Fayetteville in March 2001 with her two children, Jakob and his six-year-old sister. Ms. Perkins moved into Defendant's house within three or four weeks of her arrival in Fayetteville.

Trial testimony indicated that Defendant's relationship with Ms. Perkins was tumultuous; for example, shortly after Ms. Perkins moved into Defendant's house, Defendant asked her to move out so he could work things out with the mother of his child, who was pregnant again, possibly with his child. But a week later Defendant changed his mind, and Ms. Perkins moved back into his house. Ms. Perkins testified that, at the beginning of the relationship, Defendant "was wonderful with Jakob," and that he played with the boy and had a lot of interaction with him, although he was not involved in parenting responsibilities.

By the end of April 2001, however, Defendant and Ms. Perkins began to have arguments related to Jakob, including Defendant's suggestion that the boy should go to live with his father in Texas. Also around this time, Jakob began having tantrums in which he would bang his head on the floor. Jakob's doctor testified that such head banging is not unusual in children, but they are not injured by it, and it cannot produce fatal brain injury. Jakob was slightly developmentally delayed.

Throughout June and July 2001, the couple's relationship continued to deteriorate. In June, Ms. Perkins took an overdose of sleeping pills and had her stomach pumped at the hospital, but she denied that it was a suicide attempt. Around the beginning of July, Ms. Perkins threatened to leave Defendant because of his "picking on" Jakob; she packed belongings and left the house with Jakob, but the two returned a short time later, after Defendant and Ms. Perkins had spoken on the telephone.

According to testimony at Defendant's trial, Ms. Perkins put Jakob down for his nap between 1:00 and 2:00 p.m. on 18 August 2001, and she then went to the store a short time later, taking Defendant's car because of heavy rains and flooding. Ms. Perkins stated that Jakob was "fine" at that time. While she was out, she called Defendant, who mentioned during the course of their conver-

STATE v. FAULKNER

[180 N.C. App. 499 (2006)]

sation that he had found Jakob on the floor and put him back in the bed. Defendant called her back a few minutes later, while she was on her way home, and was upset because Ms. Perkins had taken his car to the store, rather than her own. All told, Ms. Perkins estimated her trip to the store took approximately twenty to thirty minutes; no one else was in the house during that time other than Defendant and Jakob. She did not check on Jakob after she arrived back at the house.

Around 5:00 p.m., Ms. Perkins went into Jakob's room to wake him from his nap and found him on the floor on his stomach. When she picked him up, his eyes rolled into the back of his head, and his arms and legs went stiff. Ms. Perkins called 911, and an ambulance arrived approximately fifteen minutes later and transported Jakob to the hospital. He was transferred to Chapel Hill, but he died later that night.

At Defendant's trial, medical personnel testified that Jakob's pupils were unequal and slow to react to light, evidence of a serious head injury, and that there was a raised and visibly noticeable hematoma on the left side of Jakob's head. His stiff arms and legs, called "posturing," indicated brain swelling from a head injury. One emergency responder testified that, in response to the question of what had happened to Jakob, Defendant appeared nervous, with the color drained from his face, and did not respond; Ms. Perkins answered that she believed Jakob had fallen out of his bed. Jakob's bed was eight inches to a foot off the floor, and testimony at trial suggested that a fall from such a height was inconsistent with and could not have caused the type of head injury suffered by Jakob.

Additional testimony was offered at trial as to Defendant's and Ms. Perkins' demeanor at the hospital and the types of treatment offered to Jakob. Five medical experts testified for the State that the cause of Jakob's death was brain swelling caused by blunt force trauma to the head. According to one expert, Jakob would have been immediately symptomatic from the injuries and would have been rendered completely unresponsive, unable to eat, walk, or communicate. None of the State experts believed the injuries could have been accidental, barring an incident such as a fall from a third-story window. However, Defendant offered testimony from three expert witnesses who theorized that Jakob might have died from a stroke or series of strokes, a blockage of veins in the brain, or dissection or clotting of the carotid artery, although such cases would not have accounted for his external bruises.

STATE v. FAULKNER

[180 N.C. App. 499 (2006)]

At the conclusion of the trial, the jury returned a verdict finding Defendant guilty of second-degree murder. The trial court sentenced Defendant to a term of 125 to 159 months' imprisonment. Defendant now appeals that verdict, arguing that the trial court (I) erred by allowing impermissible character evidence; (II) erred by allowing impermissible profile evidence as to "normal caretaker reaction," which was irrelevant and prejudicial; (III) committed plain error by allowing irrelevant and highly prejudicial evidence as to one side of a telephone conversation between Defendant and his father and as to Ms. Perkins' suspicions about Defendant's role in Jakob's death; (IV) committed plain error by admitting testimony about comments made by Jakob's grandmother about Defendant at Jakob's funeral; (V) erred by allowing lay witnesses to offer expert opinions; and (VI) committed plain error by allowing testimony as to Ms. Perkins' attitude towards Defendant after both were arrested.

I.

[1] First, Defendant argues that the trial court erred by denying his motion to suppress testimony from Ms. Perkins' mother, Peggy Acker, regarding the June 2001 incident in which Ms. Perkins took an overdose of sleeping pills. Defendant contends that the testimony was offered solely as evidence of his character and therefore should have been disallowed under North Carolina Rule of Evidence 404. *See* N.C. Gen. Stat. § 8C-1, Rule 404 (2005) (character evidence not generally admissible to prove conduct).[2]

The standard of review in determining whether a trial court properly denied a motion to suppress evidence is whether the findings of fact are supported by competent evidence, and whether the conclusions of law are in turn supported by those findings of fact. *State v. Cockerham*, 155 N.C. App. 729, 736, 574 S.E.2d 694, 699, *disc. review denied*, 357 N.C. 166, 580 S.E.2d 702 (2003); *see also*

---

2. We note that, at trial, Defendant's counsel told the trial court that he did not believe the testimony was Rule 404(b) evidence of other crimes, wrongs, or acts, but was instead Rule 404(a) evidence of Defendant's having "a character trait of being cold-hearted and callous," being used to show that Defendant acted in conformity with that character on the particular occasion of Jakob's death. However, Defendant's brief to this Court cites to Rule 404(b) as the basis for disallowing the evidence. Because the assignment of error references only Rule 404, without specifying which section, we address the merits of Defendant's argument and do not find that he has attempted to "swap horses" on appeal. *See Weil v. Herring*, 207 N.C. 6, 10, 175 S.E. 836, 838 (1934); *see also* N.C. R. App. P. 10(a) ("[T]he scope of review on appeal is confined to a consideration of those assignments of error set out in ·the record on appeal.)". Nevertheless, we deem his argument as to Rule 404(a) to be abandoned since none was presented in his brief.

*State v. Smith*, 160 N.C. App. 107, 114, 584 S.E.2d 830, 835 (2003) (stating that a trial court's findings of fact regarding a motion to suppress are conclusive on appeal if supported by competent evidence, even if there is other, conflicting evidence); *State v. Logner*, 148 N.C. App. 135, 138, 557 S.E.2d 191, 193-94 (2001) (noting that an appellate court will not overturn a trial court's conclusions of law as to a motion to suppress if they are supported by its factual findings). Indeed, "[w]hether to exclude evidence of other crimes or bad acts is a matter within the sound discretion of the trial court." *State v. Woolridge*, 147 N.C. App. 685, 692, 557 S.E.2d 158, 162 (2001), *rev'd on other grounds*, 357 N.C. 544, 592 S.E.2d 191 (2003). A trial court will be held to have abused its discretion only "upon a showing that its ruling was manifestly unsupported by reason and could not have been the result of a reasoned decision." *State v. Riddick*, 315 N.C. 749, 756, 340 S.E.2d 55, 59 (1986).

North Carolina Rule of Evidence 404(b) provides in pertinent part:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake, entrapment or accident.

N.C. Gen. Stat. § 8C-1, Rule 404(b) (2005). "Th[e] list of proper purposes is neither exclusive nor exhaustive." *State v. Church*, 99 N.C. App. 647, 653, 394 S.E.2d 468, 472 (1990) (citing *State v. Young*, 317 N.C. 396, 412 n.2, 346 S.E.2d 626, 635 n.2 (1986)). According to our Supreme Court, Rule 404(b) is

> a clear general rule of *inclusion* of relevant evidence of other crimes, wrongs or acts by a defendant, subject to but *one exception* requiring its exclusion if its *only* probative value is to show that the defendant has the propensity or disposition to commit an offense of the nature of the crime charged.

*State v. Coffey*, 326 N.C. 268, 278-79, 389 S.E.2d 48, 54 (1990). Thus, so long as evidence of a defendant's prior acts makes the existence of any fact at issue, other than the character of the accused, more or less probable, that evidence is admissible under Rule 404(b). *Id.*

Nevertheless, any Rule 404(b) evidence "should be carefully scrutinized in order to adequately safeguard against the improper intro-

duction of character evidence against the accused." *See State v. al-Bayyinah*, 356 N.C. 150, 153-55, 567 S.E.2d 120, 122-23 (2002) (citing cases and text expounding upon the rationale for limitation), *cert. denied*, 126 S. Ct. 1784, 164 L. Ed. 2d 528 (2006). A trial court should consider whether the evidence is offered for a proper purpose, whether it is relevant, and whether its probative value is substantially outweighed by its potential for unfair prejudice to the defendant. *Huddleston v. United States*, 485 U.S. 681, 691-92, 99 L. Ed. 2d 771, 784 (1988). Of course, "[e]vidence which is probative of the State's case necessarily will have a prejudicial effect upon the defendant; the question is one of degree." *Coffey*, 326 N.C. at 281, 389 S.E.2d at 56.

Here, the testimony in question was summarized and read into the record by the trial court:

Ms. Acker described going to the defendant's house in early June after receiving a call from Janet that she needed assistance. When Ms. Acker arrived, she realized Janet needed medical attention and asked the defendant to call 911. The defendant refused. He then indicated where the phone was located. The defendant also initially refused to give Ms. Acker the street address. The defendant told Ms. Acker he did not know what Janet had taken and, quote, I don't care if she dies, end quote.

After hearing from the State and defense counsel on the motion to suppress, the trial court found that the testimony would not constitute impermissible character evidence but was instead "factual information dealing with the dynamics of the two personalities involved, that is Ms. Perkins and [Defendant]. They are factual declarations by [Defendant]." He further found that because "the state is relying upon a circumstantial evidence case in this case," those dynamics were "relevant and probative as to assessing the two [personalities]," and the factual statement related to Defendant's "perception and relationship with Ms. Perkins at that time." The trial court therefore denied the motion to suppress and allowed the testimony.

In *State v. Carrilo*, 149 N.C. App. 543, 562 S.E.2d 47 (2002), in which the defendant had been convicted of the first-degree murder of his girlfriend's eight-month-old child, this Court considered the denial of a motion to suppress evidence of the defendant's prior instances of violence toward the mother of the child. Noting that the evidence was offered to show "why the mother did not take any action against defendant when he first began assaulting her son; to identify defendant, rather than [the mother], as the perpetrator; and to dispel defend-

ant's contention that the injuries were accidentally inflicted," this Court found no abuse of discretion by the trial court. *Id.* at 551, 562 S.E.2d at 52.

We find *Carrilo* to be directly analogous to the instant case and likewise conclude that the trial court here did not abuse its discretion in allowing the evidence as to Defendant's conduct during Ms. Perkins' overdose of sleeping pills in June 2001. Given the defense's attempts to suggest that Ms. Perkins may have been the perpetrator or that Jakob died from an accidental fall, evidence concerning the relationship between Defendant and Ms. Perkins was probative for a purpose other than his bad character. The trial court made appropriate findings of fact based on competent evidence, and therefore we will not disturb its conclusions of law. This assignment of error is accordingly overruled.

II.

[2] Second, Defendant argues that the trial court erred by overruling his objection to the testimony of a State expert as to "normal caretaker reaction" and a profile of caretaker behavior after an injury to a child. Defendant contends the testimony was irrelevant and prejudicial and fell outside the parameters of permissible expert testimony, as established by N.C. Gen. Stat. § 8C-1, Rule 702 (2005). We disagree.

As this Court has previously held,

> According to Rule 702 of the North Carolina Rules of Evidence, expert witness testimony is admissible if it will appreciably help the jury. While applying this test, the trial court must balance the probative value of the testimony against its potential for prejudice, confusion, or delay. The trial court has wide discretion in determining whether expert testimony is admissible.

*State v. Owen*, 133 N.C. App. 543, 549, 516 S.E.2d 159, 164 (internal quotations and citation omitted), *disc. review denied*, 351 N.C. 117, 540 S.E.2d 744 (1999). Thus, "a trial court's ruling on the qualifications of an expert or the admissibility of an expert's opinion will not be reversed on appeal absent a showing of abuse of discretion." *Howerton v. Arai Helmet, Ltd.*, 358 N.C. 440, 458, 597 S.E.2d 674, 686 (2004); *see also State v. Anderson*, 322 N.C. 22, 28, 366 S.E.2d 459, 463, *cert. denied*, 488 U.S. 975, 102 L. Ed. 2d 548 (1988); *Riddick*, 315 N.C. at 756, 340 S.E.2d at 59 (an abuse of discretion is found only when the trial court ruling was "manifestly unsupported by reason and could not have been the result of a reasoned decision").

In the instant case, Dr. Sharon Cooper, a developmental and forensic pediatrician, testified as a rebuttal witness for the State. Among other things, Dr. Cooper outlined three parameters used by medical personnel to determine whether a child's injuries are accidental or inflicted, namely—the consistency of the history given by the caretaker, the extent to which the caretaker's explanation is consistent with the extent of the injuries, and the behavior of the caretaker. The objected-to exchange was transcribed as follows:

Q: . . . What is the normal caretaker reaction after an injury to a child or does it vary, that type of thing?

. . .

A: Very often, when a child has been accidentally injured, and it's obvious that they're injured, for example unconscious, unable to respond to them or having seizures, if it's an immediate onset of the accident and then you see these kinds of findings, caregivers who are present and witness an accident, right away try to seek help for the child. On the other hand, the forensic pediatric literature is very clear that when children are injured intentionally, when there is an inflicted injury, it is very common, it's almost the rule more so than the exception, that the individual who has injured the child will leave them and not seek care for them. . . .

. . .

A: Oftentimes the caregiver is not concerned about what has happened to the child. They're much more concerned about how it impacts upon them, but not so much about what has happened to the child.

The trial court overruled defense counsel's objections to the questions and allowed answers as to a caretaker profile.

"The law wisely permits evidence not otherwise admissible to be offered to explain or rebut evidence elicited by the defendant himself." *State v. Anthony*, 354 N.C. 372, 415, 555 S.E.2d 557, 585 (2001) (internal quotations and citations omitted), *cert. denied*, 536 U.S. 930, 153 L. Ed. 2d 791 (2002). Thus, "[w]here one party introduces evidence as to a particular fact or transaction, the other party is entitled to introduce evidence in explanation or rebuttal thereof, even though such latter evidence would be incompetent or irrelevant had it been offered initially." *Id.*

Here, earlier testimony offered by medical experts for the defense had outlined some criteria used in determining child abuse; one expert had also suggested that there was an overdiagnosis and perhaps rush to judgment of child abuse because of a belief that child abuse is underreported and because "everybody is completely discombobulated by the death of a child . . . because children are not supposed to die." In light of this defense testimony, Dr. Cooper's statements as to the parameters used to determine child abuse, and specifically the profile of normal caretaker behavior, had significant probative value as proper rebuttal evidence.

Even assuming *arguendo* that Dr. Cooper's testimony would have been impermissible if offered during the State's direct case, the defense opened the door to the criteria used to determine if child abuse has occurred, including what is considered normal caretaker behavior in such situations. Accordingly, we find the trial court's decision to allow this testimony was reasonable and was therefore not an abuse of its discretion. This assignment of error is overruled.

### III.

[3] Third, Defendant argues the trial court committed prejudicial error and plain error by allowing testimony as to Ms. Perkins' suspicions of Defendant regarding Jakob's death, her mother's disapproval of Ms. Perkins' relationship with Defendant, and the substance of one side of a phone conversation Defendant had with his father at the hospital while Jakob was being treated.

Regarding Defendant's assertion as to prejudicial error, we note that under the rules of this Court,

> In order to preserve a question for appellate review, a party must have presented to the trial court a timely request, objection or motion, stating the specific grounds for the ruling the party desired the court to make if the specific grounds were not apparent from the context. It is also necessary for the complaining party to obtain a ruling upon the party's request, objection or motion.

N.C. R. App. P. 10(b)(1). Here, Defendant made no objection at trial to any of the testimony challenged in this assignment of error; indeed, on several occasions, the objected-to statements were made under cross-examination by defense counsel. We therefore dismiss the portion of Defendant's assignment of error that asserts the trial court committed prejudicial error.

STATE v. FAULKNER

[180 N.C. App. 499 (2006)]

Nevertheless, our appellate rules state that

> In criminal cases, a question which was not preserved by objection noted at trial and which is not deemed preserved by rule or law without any such action, nevertheless may be made the basis of an assignment of error where the judicial action questioned is specifically and distinctly contended to amount to plain error.

N.C. R. App. P. 10(c)(4). Thus, a defendant may challenge a trial court's admission of evidence under a plain error standard even if no objection was made at trial. However, "[t]he plain error rule applies only in truly exceptional cases," such that the appellate court would be "convinced that absent the error the jury probably would have reached a different verdict." *State v. Cummings*, 352 N.C. 600, 636, 536 S.E.2d 36, 60-61 (2000) (citation and quotation omitted), *cert. denied*, 532 U.S. 997, 149 L. Ed. 2d 641 (2001). "Therefore, the test for 'plain error' places a much heavier burden upon the defendant than [that on] defendants who have preserved their rights by timely objection." *Id.*, 536 S.E.2d at 61. To meet this burden, a defendant must convince the appellate court, using support from the record, that "the claimed error is so fundamental, so basic, so prejudicial, or so lacking in its elements that justice could not have been done." *State v. Fleming*, 350 N.C. 109, 132, 512 S.E.2d 720, 736, *cert. denied*, 528 U.S. 941, 145 L. Ed. 2d 274 (1999). For those reasons, then, the "bare assertion" of plain error in an assignment of error, without accompanying explanation, analysis, or specific contentions in a defendant's brief, is insufficient to show plain error. *Cummings*, 352 N.C. at 637, 536 S.E.2d at 61.

In his brief, Defendant states the standard of review for this assignment of error to be that for "balancing prejudicial effect against probative value," which would be an abuse of discretion standard, not the plain error standard. Even looking past this violation of the appellate rules, *see* N.C. R. App. P. 28(b)(6) ("[t]he [appellant's brief] argument shall contain a concise statement of the applicable standard(s) of review for each question presented . . ."), we find that the admission of this testimony did not rise to the level of plain error, such that it "tilted the scales" and caused the jury to convict Defendant. *See Cummings*, 352 N.C. at 636, 536 S.E.2d at 61.

The State offered a significant amount of evidence at trial that showed the building tension in Defendant's house in the weeks leading up to Jakob's death, as a result of the deteriorating relationship between Defendant and Ms. Perkins, as well as of Defendant's "pick-

ing on" Jakob. Other evidence showed that Defendant was alone at home with Jakob at the time the child's injuries were sustained, and that his behavior with emergency personnel and at the hospital was somewhat unusual. In light of the strength of the State's case against Defendant, the challenged statements, particularly about Ms. Perkins' suspicions in the months after Jakob's death and her mother's dislike of Defendant, were unlikely to have been determinative factors in the jury's verdict. Moreover, the testimony about the phone conversation included Defendant's denial to his father of any involvement in or responsibility for Jakob's injuries—information which could be considered exculpatory rather than harmful. We therefore overrule this assignment of error.

## IV.

[4] Fourth, Defendant contends that the trial court committed plain error when it admitted testimony concerning Jakob's grandmother's comments about Defendant at Jakob's funeral. However, Defendant's brief fails to offer any discussion of these comments or argument to support this assertion. According to the rules of this Court, "[a]ssignments of error not set out in the appellant's brief, or in support of which no reason or argument is stated or authority cited, will be taken as abandoned." N.C. R. App. P. 28(b)(6); *see also Cummings*, 352 N.C. at 636-37, 536 S.E.2d at 61 (requiring a defendant to offer some "explanation, analysis, or specific contention" in his brief to support a "bare assertion" of plain error, or else waiving appellate review). We therefore find that Defendant abandoned his fourth assignment of error as to the testimony about Jakob's grandmother's comments about Defendant at Jakob's funeral.

## V.

[5] Fifth, Defendant argues that the trial court erred by admitting the opinion testimony of lay witnesses as to Jakob's medical condition, in violation of North Carolina Rule of Evidence 701, and that the admission of testimony in instances in which Defendant did not object at trial rose to the level of plain error. However, as noted by Defendant himself, all of the testimony being challenged was also properly admitted through other expert witnesses; each of the doctors who testified for the State explained the nature of Jakob's injuries and their belief that they could not have been caused by falling off of his bed. As such, we find that the admission of this evidence through testimony by lay witnesses was not prejudicial and thus cannot rise to the level of plain error. Defendant makes only the bare assertion that

the testimony "impacted the jury verdict." Accordingly, we dismiss the portion of his assignment of error that alleges plain error.

We review the admission of opinion testimony by expert and lay witnesses under an abuse of discretion standard. *Anderson*, 322 N.C. at 28, 366 S.E.2d at 463; *State v. Washington*, 141 N.C. App. 354, 362, 540 S.E.2d 388, 395 (2000), *disc. review denied*, 353 N.C. 396, 547 S.E.2d 427 (2001). In North Carolina, "[w]hile the better practice may be to make a formal tender of a witness as an expert, such a tender is not required." *State v. White*, 340 N.C. 264, 293, 457 S.E.2d 841, 858, *cert. denied*, 516 U.S. 994, 133 L. Ed. 2d 436 (1995). "Further, absent a request by a party, the trial court is not required to make a formal finding as to a witness' qualification to testify as an expert witness. Such a finding has been held to be implicit in the court's admission of the testimony in question." *Id.* at 293-94, 457 S.E.2d at 858 (internal citation omitted). A party must make a specific objection to the content of the testimony or the qualifications of a witness as an expert in a particular field; a general objection will not preserve the matter for appellate review. *Riddick*, 315 N.C. at 758, 340 S.E.2d at 60.

Here, Defendant contends that testimony by emergency medical personnel Wayne Averitt and Tina Joyner as to Jakob's medical condition and the possible cause of his injury exceeded the scope of permissible lay opinion testimony. However, at trial, defense counsel made only general objections to the testimony; by overruling the objections, the trial court implicitly accepted Mr. Averitt's and Ms. Joyner's qualifications as expert witnesses. By failing to specifically object at trial to their qualifications, Defendant waived the right to raise this issue on appeal.

Moreover, even if Defendant had properly preserved his challenge to the testimony, we find that Mr. Averitt and Ms. Joyner were qualified to render their opinions as to the nature of Jakob's injuries and the possibility that they were caused by falling out of a toddler bed that they themselves examined. By virtue of their emergency medical training and experience, both were equipped with "scientific, technical, or other specialized knowledge" that would "assist the trier of fact to understand the evidence or to determine a fact in issue." N.C. Gen. Stat. § 8C-1, Rule 702 (2005). The questions and answers related specifically to their area of expertise and qualifications. *Cf. State v. Shuford*, 337 N.C. 641, 649-50, 447 S.E.2d 742, 747 (1994) (requiring defendant to make some showing of qualifications of emergency medical technician as either an expert or lay witness before he could testify as to the distance from which victim was shot).

STATE v. FAULKNER

[180 N.C. App. 499 (2006)]

Accordingly, this assignment of error is overruled.

## VI.

[6] Sixth, Defendant argues that the trial court committed plain error by admitting testimony that Ms. Perkins screamed at Defendant when the two were placed near each other after their arrests.[3] We find this argument to be without merit.

Ms. Perkins testified as to her emotional outburst at the police station, stating that she had screamed, "Why did you do this? Why did you do this to me? Why did you do this to my son? Why did you do this to my family?" In light of the other substantial evidence offered by the State, the admission of this testimony by Ms. Perkins did not rise to the level of plain error, such that it "tilted the scales" and convinced the jury to convict Defendant. *See Cummings*, 352 N.C. at 636, 536 S.E.2d at 61. Moreover, in light of the defense theories at trial that either Ms. Perkins inflicted Jakob's injuries, or they were accidental, this evidence was probative to refute those suggestions. Given that "[e]vidence which is probative of the State's case necessarily will have a prejudicial effect upon the defendant; the question is one of degree," *Coffey*, 326 N.C. at 281, 389 S.E.2d at 56, and the obviously heightened emotional state of Ms. Perkins when she had the outburst, the degree of prejudice here was not sufficient to substantially outweigh the probative value of the evidence in question. Accordingly, we overrule this assignment of error.

In sum, we uphold Defendant's conviction for second-degree murder in the death of Jakob Waddington.

No error.

Judges McGEE and McCULLOUGH concur.

---

3. We note that here again, Defendant misstated in his brief the appropriate standard of review for this assignment of error; as noted in his brief, defense counsel objected to this testimony at trial, such that trial court's overruling the objection was preserved for appellate review under an abuse of discretion standard. Nevertheless, under either standard, we find no error in the trial court's admission of this testimony.