'STATE OF NORTH CAROLINA v. CITARIAN TYQUAN CRANDELL

No. COA10-439

(Filed 7 December 2010)

**1. Homicide— first-degree murder—motion to dismiss—sufficiency of evidence—transferred intent**

The trial court did not err by denying defendant's motion to dismiss the charge of first-degree murder. The State introduced substantial circumstantial evidence that defendant fired the shot that killed the victim and that defendant acted with malice, premeditation, and deliberation under the doctrine of transferred intent.

**2. Homicide— first-degree murder—instruction—premeditation and deliberation**

The trial court did not err or commit plain error by instructing the jury on first-degree murder by premeditation and deliberation. There was sufficient evidence presented to submit this instruction to the jury.

**3. Evidence— testimony—lay opinion—calibers of projectiles**

The trial court did not abuse its discretion in a first-degree murder case by denying defendant's motion *in limine* to exclude a detective's testimony that a bullet removed from the victim was a .40 caliber projectile. The testimony regarding the calibers of the projectiles retrieved from the crime scene based upon the detective's own personal experience and observations relating to various calibers of weapons, and was admissible as a lay opinion under N.C.G.S. § 8C-1, Rule 701.

**4. Evidence— expert witness—testimony—sufficiently reliable methods of proof**

The trial court did not abuse its discretion or commit plain error in a first-degree murder case by qualifying a special agent as an expert witness without specifying the area in which he would be allowed to offer an expert opinion, nor did the witness's testimony constitute speculation as to whether defendant's gun fired the bullet that killed the victim. The testimony was based upon sufficiently reliable methods of proof in the area of bullet identification.

**5. Indictment and Information— short form indictment—first-degree murder**

The short form indictment used to charge defendant with first-degree murder was constitutional.

Appeal by defendant from judgment entered 10 November 2009 by Judge Cy A. Grant in Edgecombe County Superior Court. Heard in the Court of Appeals 13 October 2010.

*Attorney General Roy Cooper, by Special Deputy Attorney General Melissa L. Trippe, for the State.*

*Geoffrey W. Hosford, for defendant-appellant.*

STEELMAN, Judge.

Where the State introduced substantial evidence that defendant fired the shot that killed Derek Morris and that defendant acted with malice, premeditation and deliberation, the trial court properly denied defendant's motion to dismiss the charge of first-degree murder. The trial court did not abuse its discretion in allowing Detective Rothrock to give lay opinion testimony pursuant to Rule 701 of the

STATE v. CRANDELL

[208 N.C. App. 227 (2010)]

North Carolina Rules of Evidence concerning the calibers of bullets recovered at the crime scene. The trial court did not commit plain error in allowing Special Agent Tanner to testify as an expert witness in the field of bullet identification. The short-form murder indictment was sufficient to confer jurisdiction upon the trial court.

## I. Factual and Procedural History

On 1 October 2008, Citarian Tyquan Crandell ("Defendant"), Leslie Perry ("Perry"), Cedric Corey ("Corey"), and Xavious Thomas ("Thomas") were at the EP Mart in Rocky Mount, North Carolina at approximately 2:00 a.m. Corey and Thomas arrived at the EP Mart together. Corey pumped gas while Thomas went into the store and paid for the gas. Thomas then returned to the car. Defendant walked towards the car, carrying a pistol. Perry was with Defendant. Defendant began shooting at Thomas, who jumped out of the car and returned fire. Thomas and Defendant each fired a number of rounds from their respective weapons. After the shots were fired, Corey got into the driver's seat of the car, Thomas jumped into the back seat, and they drove off. The fire fight arose out of a confrontation earlier that evening between Thomas and Perry in the parking lot of the D & I Club.

Derek Morris ("Derek") was sitting in the backseat of a car driven by his brother, Brandon Morris ("Brandon"), in the EP Mart parking lot. When the shots were fired, Brandon ducked down and started to drive away. When Brandon checked on Derek, he realized Derek had been shot in the head. Derek was taken to Nash General Hospital, where he was pronounced dead. Derek had no connection with either Thomas or Defendant, and was an innocent bystander.

At approximately 3:00 a.m. on 1 October 2008, Officer Stephen Walker ("Walker") of the Rocky Mount Police Department received a report that shots had been fired at the EP Mart. Walker was unable to locate any eyewitnesses to the shooting, but did locate fourteen .40 caliber Hornady casings. Later that morning, Corporal Scott Dew ("Dew") of the Rocky Mount Police Department went to the EP Mart to conduct an additional investigation. Dew located .32 caliber shell casings. Subsequently, a .40 caliber pistol was seized from Defendant, which was determined to have been purchased by Defendant. A .32 caliber pistol was located at Thomas' residence. Thomas admitted to having fired this weapon in the EP Mart parking lot on the morning of 1 October 2008.

Robert Rothrock ("Rothrock"), a detective with the Rocky Mount Police Department, weighed two different bullets retrieved from the Morris vehicle. One bullet appeared to be a .40 caliber projectile weighing 11.4 grams, and the other was a .32 caliber projectile weighing 4.54 grams. A fragment of a projectile retrieved from Derek's head weighed 6.2 grams. Agent Christopher Adam Tanner ("Tanner"), a special agent with the North Carolina State Bureau of Investigation, testified at trial that the bullet fragment retrieved from Derek's head was of a weight consistent with a bullet core weight of a .38 caliber or larger weapon.

On 9 February 2009, Defendant was indicted for first-degree murder. On 10 November 2009, the jury found Defendant guilty of first-degree murder. Defendant was sentenced to life imprisonment without the possibility of parole.

Defendant appeals.

## II. Motion to Dismiss

[1] In his first argument, Defendant contends the trial court erred in denying his motion to dismiss the charge of first-degree murder, because the State failed to prove that Defendant was the person who shot Derek or that Defendant acted with malice, premeditation, or deliberation. We disagree.

## A. Standard of Review

"The denial of a motion to dismiss for insufficient evidence is a question of law, which this Court reviews *de novo*." *State v. Bagley*, 183 N.C. App. 514, 523, 644 S.E.2d 615, 621 (2007) (citations omitted).

Upon Defendant's motion for dismissal, the question for the Court is whether there is substantial evidence (1) of each essential element of the offense charged, or of a lesser offense included therein, and (2) of Defendant's being the perpetrator of such offense. If so, the motion is properly denied.

. . . .

The trial court in considering such motions is concerned only with the sufficiency of the evidence to carry the case to the jury and not with its weight. The trial court's function is to test whether a *reasonable inference* of the Defendant's guilt of the crime charged may be drawn from the evidence.

The test of the sufficiency of the evidence to withstand the motion is the same whether the evidence is direct, circumstantial or both. When the motion . . . calls into question the sufficiency of circumstantial evidence, the question for the Court is whether a reasonable inference of Defendant's guilt may be drawn from the circumstances. If so, it is for the jury to decide whether the facts, taken singly or in combination, satisfy them beyond a reasonable doubt that the Defendant is actually guilty. In passing on the motion, evidence favorable to the State is to be considered as a whole in order to determine its sufficiency. This is especially true when the evidence is circumstantial since one bit of such evidence will rarely point to a Defendant's guilt.

*State v. Powell*, 299 N.C. 95, 98-99, 261 S.E.2d 114, 117-18 (1980) (internal citations and quotations omitted).

## B. Identity of Defendant

Defendant first argues that the trial court erred in denying his motion to dismiss the first-degree murder charge since there was no evidence that he shot Derek.

As stated above, "[w]hen the motion . . . calls into question the sufficiency of circumstantial evidence, the question for the Court is whether a reasonable inference of Defendant's guilt may be drawn from the circumstances." *Id.* at 99, 261 S.E.2d at 117. The State presented evidence that only two guns were fired during the incident at the EP Mart in the early morning hours of 1 October 2008; that Defendant was one of the shooters; that Thomas fired a .32 caliber pistol; that .40 caliber shell casings were found at the scene; that a .40 caliber pistol was seized from Defendant after the incident; and that the bullet fragment retrieved from Derek's head came from a weapon that was .38 caliber or larger. When viewed in the light most favorable to the State, there was ample circumstantial evidence presented by the State that the fatal shot that resulted in Derek's death was fired by Defendant's .40 caliber pistol, and that Defendant was the perpetrator of the murder. This argument is without merit.

## C. Malice, Premeditation, and Deliberation

Defendant next argues that the trial court erred in not granting his motion to dismiss because the State failed to present evidence that Defendant acted with malice, premeditation, or deliberation.

Defendant was convicted of first-degree murder based upon premeditation and deliberation. "Murder in the first degree is the unlaw-

ful killing of a human being with malice and with premeditation and deliberation." *State v. Burgess*, 345 N.C. 372, 386, 480 S.E.2d 638, 645 (1997) (quotation omitted). In the instant case, there is no question that an unlawful killing took place. In addition, "the law is well established in this State that the intentional killing of a human being with a deadly weapon implies malice . . . ." *State v. Burrage*, 223 N.C. 129, 133, 25 S.E.2d 393, 396 (1943). Evidence that Defendant used a .40 caliber pistol in the shooting provided sufficient evidence for the issue of malice to be submitted to the jury.

"Premeditation means thought beforehand for some length of time, however short. Deliberation means that the act is done in cool state of blood." *State v. Faust*, 254 N.C. 101, 106, 118 S.E.2d 769, 772 (1961) (internal quotations omitted), *cert. denied*, 368 U.S. 851, 7 L. Ed. 2d 49 (1961).

> Circumstances from which premeditation and deliberation may be inferred include:
>
> (1) lack of provocation on the part of the deceased, (2) the conduct and statements of the Defendant before and after the killing, (3) threats and declarations of the Defendant before and during the occurrence giving rise to the death of the deceased, (4) ill-will or previous difficulties between the parties, (5) the dealing of lethal blows after the deceased has been felled and rendered helpless, (6) evidence that the killing was done in a brutal manner, and (7) the nature and number of the victim's wounds.

*State v. Laws*, 345 N.C. 585, 593-94, 481 S.E.2d 641, 645 (1997) (citation omitted). Defendant contends that "[a]t worst, the evidence here showed careless use of a firearm, not a fixed intent to kill Xavious Thomas, Derek Morris, or anyone else." Taken in the light most favorable to the State, the evidence showed a prior confrontation between Defendant and Thomas at the D & I Club; that Defendant happened upon Thomas at the EP Mart; and without provocation began firing his .40 caliber pistol at Thomas. This constituted competent evidence of factors one and four listed above. This was sufficient evidence of Defendant's premeditation and deliberation directed at Thomas to support the submission of first-degree murder to the jury.

The fact that it was Derek who was killed rather than Thomas is irrelevant for our analysis of premeditation and deliberation. Under the doctrine of transferred intent:

STATE v. CRANDELL

[208 N.C. App. 227 (2010)]

> [i]t is an accepted principle of law that where one is engaged in an affray with another and unintentionally kills a bystander or a third person, his act shall be interpreted with reference to his intent and conduct towards his adversary. Criminal liability, if any, and the degree of homicide must be thereby determined. Such a person is guilty or innocent exactly as [if] the fatal act had caused the death of his adversary. It has been aptly stated that "The malice or intent follows the bullet."

*State v. Locklear*, 331 N.C. 239, 245, 415 S.E.2d 726, 730 (1992) (quoting *State v. Wynn*, 278 N.C. 513, 519, 180 S.E.2d 135, 139 (1971)).

Taken in the light most favorable to the State, we hold that there was sufficient evidence presented as to Defendant's malice, premeditation, and deliberation to warrant the submission of the charge of first-degree murder to the jury. This argument is without merit.

### III. Jury Instructions

[2] In his fourth argument, Defendant contends that the trial court erred or committed plain error in instructing the jury on first-degree murder by premeditation and deliberation in the absence of any evidence supporting the instruction. We disagree. As discussed above, there was sufficient evidence presented to submit the charge of first-degree murder to the jury. This argument is without merit.

### IV. Lay Witness Testimony

[3] In his second argument, Defendant contends that the trial court erred in denying his motion *in limine* to exclude Rothrock's testimony that the bullet removed from Derek was a .40 caliber projectile. We disagree.

### A. Standard of Review

A trial court has wide discretion in determining whether expert testimony is admissible, and may be reversed for an abuse of discretion only upon a showing that its ruling was so arbitrary that it could not have been the result of a reasoned decision. Similarly, whether a lay witness may testify as to an opinion is reviewed for abuse of discretion.

*State v. Washington*, 141 N.C. App. 354, 362, 540 S.E.2d 388, 395 (2000) (citation and internal quotation omitted), *disc. review denied*, 353 N.C. 396, 547 S.E.2d 427 (2001).

## B. Analysis

Defendant filed a pretrial motion *in limine* requesting that the court prohibit State's witnesses from testifying that the bullet fragment removed from Derek's head was a .40 caliber bullet without first being qualified as expert witnesses. This motion was heard before the commencement of the trial, and denied by the trial court. At that hearing, counsel for Defendant acknowledged that he was not objecting to lay witnesses testifying as to what an object weighed, but only to a non-expert witness giving an opinion that the bullet recovered from Derek's head was a .40 caliber.

At trial, Rothrock testified that he recovered two bullets from the Morris vehicle, State's Exhibits 21 and 23. State's Exhibit 22 was the bullet fragment recovered from Derek's head. Rothrock weighed each of the bullets and testified as follows:

Q. The projectile you're saying, State's Exhibit 21, appear [sic] to you to be a .32 caliber projectile. What was the weight of that?

A. Correct. That was 4.54 grams.

Q. All right. And State's Exhibit 23 it appeared to you to be a .40 [sic] caliber what was the weight of that?

A. That one was 11.4 grams.

Q. All right. Now, State's Exhibit 22 that you retrieved from the autopsy you weighed it.

A. Correct.

Q. And what was its weight?

A. That was 6.2 grams for this particular—

. . . .

Q. Which means then it weighed more than the entire projectile that was a .32 caliber.

A. Yes, that's correct.

We first note that Defendant's argument on appeal does not correlate with his objections at trial. The motion *in limine* and the argument on appeal are that Rothrock was not qualifed as an expert and could not testify that the bullet fragment recovered from Derek's head was a .40 caliber bullet. During Rothrock's testimony, Defendant

made two specific objections. First, he objected to Rothrock's testimony that of the two bullets recovered from the Morris vehicle (State's Exhibits 21 and 23), one appeared to be .32 caliber and the other .40 caliber. Second, he objected to Rothrock weighing the two bullet fragments found in the vehicle along with the fragment recovered from Derek's head. Neither of those objections was directed toward the argument made in the motions *in limine* or upon appeal. A motion *in limine* does not preserve a question for appellate review in the absence of the renewal of the objection at trial. *State v. Oglesby*, 361 N.C. 550, 554-55, 648 S.E.2d 819, 821 (2007); *State v. Tutt*, 171 N.C. App. 518, 518-19, 615 S.E.2d 688, 689 (2005).

We also note that Defendant has mischaracterized Rothrock's testimony. Rothrock did not state an opinion that the bullet fragment that came from Derek's head was a .40 caliber bullet. Rothrock testified that the smaller bullet (State's Exhibit 21) appeared to be a .32 caliber and weighed 4.54 grams, and the larger bullet (State's Exhibit 23) appeared to be a .40 caliber and weighed 11.4 grams. It was left for the jury to make the logical inference that the bullet recovered from Derek's head did not come from a .32 caliber weapon.

Rothrock testified that as a result of his training as a police officer, he was able to recognize the calibers of weapons and ammunition. Rule 701 of the North Carolina Rules of Evidence permits a lay witness to express an opinion that is "(a) rationally based on the perception of the witness and (b) helpful to a clear understanding of his testimony or the determination of a fact in issue." N.C. Gen. Stat. § 8C-1, Rule 701 (2009).

In the past, this Court has upheld the admission of testimony under North Carolina Rule of Evidence 701 in a similar situation. In *State v. Fisher*, this Court held that a detective's

> testimony regarding the location of shell casings when a bullet is fired from two different weapons was not based upon any "specialized expertise or training," but merely upon his own personal experience and observations in firing different kinds of weapons. Having failed to qualify [the detective] as an expert in shell casing ballistics, the State was not prevented from eliciting lay opinion testimony from him

*State v. Fisher*, 171 N.C. App. 201, 214, 614 S.E.2d 428, 437 (2005), *cert. denied*, 361 N.C. 223, 642 S.E.2d 711 (2007). In the instant case, we hold Rothrock's testimony regarding the calibers of the projectiles

retrieved from the Morris vehicle was testimony based upon Rothrock's own personal experience and observations relating to various calibers of weapons, and was admissible under Rule 701.

Even assuming *arguendo* that it was error for the trial court to admit Rothrock's testimony, the same evidence was presented to the jury through Tanner's testimony. Tanner testified without objection that the lead fragment retrieved from Derek's head was "consistent with bullet core weights of nominal .38 caliber and larger projectiles."

Defendant further contends that the trial court should have excluded testimony concerning the bullet calibers as being more prejudicial than probative under Rule 403 of the North Carolina Rules of Evidence. This rule states:

Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

N.C. Gen. Stat. 8C-1, Rule 403 (2009). "Necessarily, evidence which is probative in the State's case will have a prejudicial effect on the Defendant; the question is one of degree." *State v. Weathers*, 339 N.C. 441, 449, 451 S.E.2d 266, 270 (1994). While, the testimony given by Rothrock was certainly prejudicial, we hold that the trial judge correctly ruled that its probative value was not substantially outweighed by the degree of prejudice. Rothrock's testimony helped the jury to understand the physical evidence in the case.

The trial court did not abuse its discretion in admitting Rothrock's testimony concerning the caliber of the bullets found in the Morris vehicle, and the caliber and location of shell casings recovered at the crime scene. An abuse of discretion only occurs when the trial court's decision is "so arbitrary that it could not have been the result of a reasoned decision." *Washington*, 141 N.C. App. at 362, 540 S.E.2d at 395. The trial court's decision to admit Rothrock's testimony was not "so arbitrary that it could not have been the result of a reasoned decision." *Id.*

This argument is without merit.

### V. Expert Testimony

[4] In his third argument, Defendant contends the trial court abused its discretion or committed plain error in qualifying Tanner as an

expert witness without specifying the area in which he would be allowed to offer an expert opinion, and that Tanner's testimony constituted pure speculation as to whether Defendant's gun fired the bullet that killed Derek. We disagree.

## A. Standard of Review

Defendant failed to object to Tanner's testimony at trial; therefore, this argument will be reviewed for plain error only. *State v. Odom*, 307 N.C. 655, 660, 300 S.E.2d 375, 378 (1983). The trial court will only be overturned under plain error review when "the claimed error is a *fundamental* error, something so basic, so prejudicial, so lacking in its elements that justice cannot have been done." *Id.* (quotation omitted).

## B. Analysis

The North Carolina Supreme Court has "set forth a three-step inquiry for evaluating the admissibility of expert testimony: (1) Is the expert's proffered method of proof sufficiently reliable as an area for expert testimony? (2) Is the witness testifying at trial qualified as an expert in that area of testimony? (3) Is the expert's testimony relevant?" *Howerton v. Arai Helmet, Ltd.*, 358 N.C. 440, 458, 597 S.E.2d 674, 686 (2004) (citations omitted).

> In North Carolina, while the better practice may be to make a formal tender of a witness as an expert, such a tender is not required. Further, absent a request by a party, the trial court is not required to make a formal finding as to a witness' qualification to testify as an expert witness. Such a finding has been held to be implicit in the court's admission of the testimony in question.

*State v. Faulkner*, 180 N.C. App. 499, 512, 638 S.E.2d 18, 27-28 (2006) (internal quotation and alteration omitted).

Tanner testified that he was a special agent with the North Carolina State Bureau of Investigation assigned to the firearm and tool mark section. Tanner stated that "the work of a firearms examiner is multi-faceted. The primary responsibility of the examiner is the determination of whether or not a bullet, a cartridge case or shot shell was fired by a particular weapon." Tanner was tendered as an expert without objection from the Defendant. Tanner testified as follows:

Q. Is there anyway [the projectile retrieved from Derek's head] could have been a .32 caliber?

A.  No, not with the .32 calibers that are commonly produced. The most common bullet weight for a .32 auto is 71 grains. And I do believe that [the projectile retrieved from Derek's head] weighed 96.18 grains. And it's just a portion of the core.

. . . .

A.  Grain is a very archaic form of measurement which really only has any use in firearms work. It's how we measure the weights of bullets and the weights of gunpowder.

We hold that Tanner's testimony was based upon sufficiently reliable methods of proof in the area of bullet identification, that he was qualified as an expert in that area, and that the testimony was relevant. *Howerton*, 358 N.C. at 458, 597 S.E.2d at 686.

It was not plain error for the trial court to qualify Tanner as an expert, and "the trial court is not required to make a formal finding as to a witness' qualification to testify as an expert witness. Such a finding has been held to be implicit in the court's admission of the testimony in question." *Faulkner*, 180 N.C. App. at 512, 638 S.E.2d at 28 (internal quotation omitted). The trial court will only be overturned under plain error review when "the claimed error is a *fundamental* error, something so basic, so prejudicial, so lacking in its elements that justice cannot have been done." *Odom*, 307 N.C. at 660, 300 S.E.2d at 378 (quotation omitted). The trial court did not commit error, much less plain error in this case.

This argument is without merit.

## VI. Short-Form Indictment

[5] In his fifth argument, Defendant contends that the short-form indictment charging him with first-degree murder was fatally defective, and did not confer jurisdiction upon the trial court. We disagree.

Defendant acknowledges that this argument was made only for the purpose of preserving the issue for further appellate review. The North Carolina Supreme Court "has consistently held that indictments for murder based on the short-form indictment statute are in compliance with both the North Carolina and United States Constitutions." *State v. Braxton*, 352 N.C. 158, 174, 531 S.E.2d 428, 437 (2000) (citations omitted), *cert. denied*, 531 U.S. 1130, 148 L. Ed. 2d 797 (2001).

GORE v. ASSURANCE CO. OF AM.

[208 N.C. App. 239 (2010)]

This argument is without merit.

NO ERROR.

Judges BRYANT and ERVIN concur.